**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**T.M., Defendant–Appellant.**

**No. 02–10189.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 12, 2003.

Filed June 4, 2003.

Deirdre M. Mokos, Brian I. Rademacher, Assistant Federal Public Defenders, Tucson, AZ, for the defendant-appellant.

Serra M. Tsethlikai, Richard E. Gordon, Assistant United States Attorneys, Tucson, AZ, for the plaintiff-appellee.

Before CANBY, O'SCANNLAIN, and W. FLETCHER, Circuit Judges.

CANBY, Circuit Judge.

T.M.[1] appeals the district court's imposition of certain conditions of supervised release relating to his alleged status as a sex offender. The alleged status was based on two events that occurred, respectively, forty and twenty years ago. Largely because of the remoteness of these incidents, several of the conditions are not reasonably related to the purposes of supervised release and the district court abused its discretion in imposing them. Two other conditions suffer from procedural deficiencies. We accordingly vacate the sentence and remand for resentencing.

**I**

In July 1996, T.M. pleaded guilty to one count of conspiracy to distribute and possess marijuana in violation of 21 U.S.C. § 846. At sentencing, the district court considered information in T.M.'s Presentence Investigation Report. The report stated that, in 1961, T.M. faced criminal charges of molesting a fifteen-year-old girl. Those charges were subsequently dropped. The report also revealed that in 1981, T.M. was convicted of kidnapping an eight-year-old girl. According to the report, T.M. took the girl to a motel, made her undress, and took photographs of her nude. The report states that T.M. penetrated her with two fingers, but T.M. denies that any such action ever took place. T.M. was sentenced to probation for this offense; he subsequently violated probation and served twenty-one months in prison.

Although T.M. faced a possible sentence of 120 months for the 1996 marijuana violation, the government recom-

---

**1.** For reasons of privacy and safety, the appellant has moved for the use of initials instead of his name in our opinion. The government has not opposed the motion. The motion is granted.

mended probation because of T.M.'s cooperation with the prosecutors. At the sentencing hearing, the judge noted his discomfort at ordering probation in light of what he considered to be T.M.'s history as a sex offender, but agreed to the probation on the condition that T.M. undergo psychological treatment.

In April 1999, the government filed a petition claiming that T.M. violated his probation by associating with a previously-convicted felon named Robert Hrdlicka. T.M. knew Hrdlicka because they had shared a cell for a few days while in prison. According to the petition, T.M. and Hrdlicka attempted to enter Alberta, Canada in February 1999. At the border, T.M. and Hrdlicka identified themselves as clergymen who wanted to set up a charity to provide aid for "the needy children of Alberta." They were denied entry because of their past criminal convictions. Hrdlicka previously had been convicted of seven counts of indecent acts with a child. T.M. asserts that he did not know of these convictions at the time of the attempted entry into Canada.

T.M. reached a plea agreement with the government whereby he admitted the probation violation in exchange for a maximum of six months incarceration for the violation. The district court deferred a decision on the plea agreement until T.M. underwent a mental health examination. The psychologist performing the examination wrote an evaluation hypothesizing that T.M. was experiencing difficulty coming to grips with the consequences and magnitude of his past actions and that he tended to place responsibility for his behavior on outside causes. As a result, the evaluation concluded that T.M.'s behavior was consistent with that of an "untreated" sex offender and that his reliability as a self-reporter of his problems was "mixed and incomplete." The report recommended that the district court impose a number of conditions on T.M.'s probation geared toward preventing future sex offenses.

On February 9, 2000, the district court ruled that T.M. was to continue on probation, but the court attached additional conditions because of the "substantial risk" that T.M. might commit future sex offenses. The new conditions required T.M. to participate in sex offender treatment and to submit to risk assessment that could include polygraph examination. The conditions also forbade T.M. to have any contact with children under eighteen without permission of the probation officer, to possess any pornography or sexually stimulating material without permission from the probation officer, to engage in any occupation where he would have access to minors, to possess any camera or recording device, or to access the internet or possess a computer without permission from the probation officer.

In November 2001, T.M.'s probation officer filed a new petition to revoke probation, alleging that T.M. committed fraud, that he again had associated with a previously-convicted felon—one Robert Pyle—in seeking to establish another children's charity, and that he possessed both a videocassette cover box containing pornographic scenes and an unused one-time-use camera. T.M. and the government agreed to a maximum sentence of twenty four months and dismissal of the fraud allegation in exchange for T.M.'s admission that he possessed the camera and the video box, and that he associated with Pyle. This plea agreement apparently was never reduced to writing.

In March 2002, the district court held a disposition hearing on T.M.'s probation violation. The district court revoked T.M.'s probation and sentenced him to twenty-four months incarceration plus an additional 414 days for time already spent in custo-

dy, followed by sixty months of supervised release. T.M. had submitted a disposition memorandum requesting that the court not impose requirements of sex offender treatment and the avoidance of pornography as conditions of the supervised relief. T.M. had been given a polygraph examination in accordance with the court's earlier authorization, and the polygrapher's report indicated that T.M. had been truthful in denying that he had engaged in any sexual conduct, or had even entertained any sexual fantasies, involving minors in the twenty years since his 1981 conviction. The district court stated that this polygraph result was not "a responsible or credible factor that should outweigh everything else and should result in the termination of sex offender treatment." The district court accordingly retained all the previous conditions of probation and added several new conditions. The final numbered conditions of supervised release set forth in the court's written order included the following conditions that are challenged on this appeal. Those conditions provide that T.M.:

3. [is] prohibited from making major purchases, incurring new financial obligations, or entering into any financial contracts without the prior approval of the probation officer.

4. participate in sex offender treatment as directed by the probation officer and submit to risk assessment including physiological testing which may include, but is not limited to, polygraph, plethysmograph, and/or ABEL Assessment. Contribute to the cost of treatment in an amount to be determined by the probation officer.

6. not have contact with children under the age of 18 without prior written permission of the probation officer, and shall report any unauthorized contact immediately to the probation officer.

7. not possess any form of pornography, sexually stimulating, or sexually oriented material as deemed inappropriate by the probation officer and/or treatment staff. [T.M.] shall not enter any location where pornography or erotica can be accessed, obtained, or viewed.

8. not possess any type of camera or video recording device.

9. [is] restricted from engaging in any occupation, business, or profession where [T.M.] ha[s] access to children without prior permission of the probation officer.

10. register with the state sex offender agency in any state where [T.M.] reside[s], [is] employed, carr[ies] on a vocation, or [is] a student, as directed by the probation officer.

11. maintain an appropriate appearance at all times which includes the wearing of undergarments, and appropriate outer clothing in the home or places where others might view [T.M.], or be present.

12. not possess or use a computer with access to any "on-line computer service" at any location (including place of employment) without the prior written approval of the probation officer. This includes any Internet Service provider, bulletin board system or any other public or private network or e-mail system.

13. not utilize any sex-related adult telephone numbers. The probation officer will verify compliance through the submission of personal/business telephone records.

14. participate in a Home Confinement Program with electronic monitoring under the sanction of detention for a period of 180 days. Contribute to the cost of electronic monitoring in an amount to be determined by the probation officer.

This appeal followed.

## II

The district court has wide discretion to impose conditions of supervised

release.[2] *United States v. Consuelo–Gonzalez,* 521 F.2d 259, 262 (9th Cir.1975) (en banc). That discretion is not unfettered, however; the conditions imposed are permissible only if they are reasonably related to the goal of deterrence, protection of the public, or rehabilitation of the offender. *See* 18 U.S.C. § 3583(d)(1); 18 U.S.C. § 3553(a). Even if T.M.'s conditions meet the above requirements, they still can involve "no greater deprivation of liberty than is reasonably necessary for the purposes" of supervised release. 18 U.S.C. § 3583(d)(2). The supervised release conditions need not relate to the offense for which T.M. was convicted as long as they satisfy *any of the conditions set forth above.* *United States v. Johnson,* 998 F.2d 696, 699 (9th Cir.1993).

The primary issue is whether the sex offender conditions of T.M.'s supervised release, specifically conditions 4 and 6–13, are reasonably related to protecting the public and preventing recidivism in light of T.M.'s history and the nature of his probation violations. We hold that the district court abused its discretion because the evidence does not establish such a relationship and we therefore require the elimination of those conditions.

◼ The sum total of the evidence supporting the imposition of the sex offender conditions consists of the following:

- A 1961 charge, later dismissed, of a sexual relationship with a minor;
- A 1981 kidnapping conviction involving the undressing and nude picture-taking of an eight-year-old girl;

- The impersonation of clergy by T.M. and a convicted sex offender in an attempt to enter Canada for the purpose of setting up a children's charity;
- A psychological evaluation indicating that T.M. does not "present" as a treated sex offender; and
- The presence of an adult videocassette cover and an unused one-time-use camera in T.M.'s apartment.

The conditions imposed run afoul of the supervised release statute because there is no reasonable relationship between them and either deterrence, public protection or rehabilitation. When explaining its decision to impose the conditions, the district court relied heavily on T.M.'s prior kidnaping conviction and his previous sexual relationship with a minor. Those actions, however, took place twenty and forty years ago respectively. Supervised release conditions predicated upon twenty-year-old incidents, without more, do not promote the goals of public protection and deterrence.

*See, e.g., United States v. Scott,* 270 F.3d 632, 636 (8th Cir.2001) (finding it unreasonable to impose sex offender conditions on the basis of a past conviction for sexual abuse fifteen years earlier); *United States v. Kent,* 209 F.3d 1073, 1077 (8th Cir.2000) (finding that an incident of abuse committed thirteen years earlier does not justify supervised release conditions). The fact that T.M. has lived the last twenty years without committing a sex offense suggests that he no longer needs to be deterred or shielded from the public.

◼ Although more recent relevant events may revive old offenses and justify

---

**2.** We review for abuse of discretion the district court's imposition of the conditions of supervised release. *See United States v. Johnson,* 998 F.2d 696, 697 (9th Cir.1993). Although T.M.'s disposition memorandum specifically referred only to the requirements of sex offender treatment and restrictions on pornography in objecting to sex offender sta-

tus, the district court did not differentiate among the sex offender conditions, and imposed several new ones, in ruling that it was proper to continue to treat T.M. as a sex offender. The government in its brief employs the abuse-of-discretion standard in addressing all of the sex offender conditions, and we do the same.

the imposition of supervised release conditions related to sex offender status, the intervening actions by T.M. since his 1981 kidnapping conviction cannot serve that purpose because they bear no significant relation to sex offender status. The fact that T.M. sought to set up a children's charity with a convicted sex offender is not probative of his likelihood of committing future sex crimes. First, although T.M. briefly shared a prison cell with Hrdlicka, the evidence in the record indicates that T.M. at the relevant times did not know the nature of the crimes for which Hrdlicka was incarcerated.[3] Second, the Presentence Investigation Report characterizes T.M.'s alleged charitable efforts as nothing more than a financial scam seeking to exploit those with soft spots in their hearts for children rather than as a veiled attempt to gain access to minors with whom he could have sexual relations. T.M.'s attempted scam appeared not to target minors but wealthy adult donors.

■ The probation officer's discovery of a pornographic video cover and a one-time-use camera also fail to justify the sex offender conditions. The alleged pornography did not relate to minors or to any sexual offense. The mere ownership of a one-time-use camera is susceptible of too many innocent explanations to serve as evidence of sex offender status in the absence of any evidence of improper use of that or any other camera in the past twenty years.[4]

The district court gave weight to statements in the psychological evaluation that T.M. was not a reliable self-reporter, and that he did not "present" as a treated sex offender. Those statements were made in the context of detailing T.M.'s refusal to take responsibility for, and to acknowledge the gravity of, his past actions.[5] The fact that T.M. did not follow the confessional style favored by his psychologist did not, however, establish a likelihood of new sexual offenses when T.M.'s attitude had not led to any deviations in the prior twenty years. Finally, T.M.'s admission to his therapist that he was not trustworthy was made in reference to his social relationships with other adults; it may not properly be transposed into an admission of potential criminality.

In summary, T.M.'s twenty-year-old conviction and forty-year-old dismissed charge, along with his subsequent probation violations and therapeutic evaluations, even considered cumulatively, do not establish a reasonable relationship between his sexually-related conditions of supervised release and either deterrence, public safety, or rehabilitation. In imposing those conditions, the district court abused its discretion. Accordingly, we vacate T.M.'s sentence and remand for resentencing, the new sentence not to include the present conditions 4 and 6–13.[6]

---

3. It is not at all unlikely that a prisoner, in the interest of his own safety, would conceal from fellow inmates his convictions for sexual abuse of children.

4. In *United States v. Paul*, 274 F.3d 155, 171–72 (5th Cir.2001), the Fifth Circuit upheld a ban on photographic equipment. In contrast to this case, however, the defendant in *Paul* recently had used cameras to take pictures of nude children and to produce multiple reproductions of pornographic images.

5. We note, however, that other treatment reports appended to the Presentence Investigation Report evinced a contrary view. The Sex Offender Treatment Progress Report of February 2001 states that T.M. "appears to take responsibility for his behavior and not diminish or minimize its impact on the victim." A similar Report of May 2001 referred to T.M.'s "good responsibility taking overall."

6. Our disposition of this issue makes it unnecessary for us to address T.M.'s contentions that the sex offender provisions were overbroad, impermissibly vague, or violative of his

## III

■ T.M. argues that conditions 3 and 14 must be vacated and remanded because he was not given notice that the district court was considering imposing them. Federal Rule of Criminal Procedure 32.1 requires the district court to give T.M. the opportunity to comment on any matters relating to his sentence. Fed.R.Crim.P. 32.1. Therefore, the district court cannot take any action that adversely affects T.M.'s sentence without first giving him notice that the court is contemplating such a ruling. *See United States v. Lopez*, 258 F.3d 1053, 1055 (9th Cir.2001) (quoting *Burns v. United States*, 501 U.S. 129, 138, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991)).

■ The district court did not impose conditions 3 and 14 at the March 20, 2002 disposition hearing, but added them later as part of its written order. The government concedes that there is a conflict between the district court's oral and written pronouncements, and concedes that a remand is appropriate for condition 3 so that the district court can give T.M. proper notice before deciding whether to impose that condition.[7]

Although the government acknowledges that remand is required with regard to condition 3, it argues that condition 14, which requires T.M. to live in home confinement for 180 days following his release from prison, is permissible because T.M. had prior notice that the court was considering ordering a period of home detention. Although the government is correct on the question of notice, there is another poten-tial problem with condition 14 that requires further consideration by the district court.

■ T.M. is considered to have advance notice of any condition that is contemplated by the sentencing guidelines. *See Lopez*, 258 F.3d at 1055–56. The guidelines explicitly contemplate a period of home release as a possible condition of supervised release, but "only as a substitute for imprisonment." *See* U.S.S.G. § 5F1.2; U.S.S.G. § 5D1.3(e)(2); *see also United States v. Leaphart*, 98 F.3d 41, 43 (2d Cir.1996) ("Here, the Magistrate Judge decided to sentence [the defendant] to the maximum possible term of imprisonment. Having made that decision, she could not also sentence him to home detention."); *but cf. United States v. Elkins*, 176 F.3d 1016, 1020–21 (7th Cir.1999) (upholding a sentence where the combined prison and community confinement time exceeded the maximum allowable sentence).

■ T.M. contends that he had a bargain with the prosecutor that he would receive no greater additional sentence than twenty-four months imprisonment, and that the addition of 180 days of home confinement as a condition of supervised release violates that agreement. We are unable to evaluate this argument because the record does not reflect the nature or contents of the plea agreement. We have no way of knowing the exact terms of the agreement regarding incarceration, or

constitutional rights. We reject as premature T.M.'s argument that condition 15, which prohibits T.M. from representing himself to be a minister or church representative, violates his First Amendment Free Exercise rights by constraining his ability to join the clergy. Should T.M. attempt to become a clergyman at some point in the future, the applicability of the condition can be dealt with at that time. *See*

*United States v. Romero*, 676 F.2d 406, 407 (9th Cir.1982).

7. T.M. also argues that he was not given proper notice concerning conditions 10, 11 and 13. Because we vacate those conditions for not bearing a reasonable relationship to the purposes of supervised release, we need not address this point.

whether the plea agreement was binding on the judge pursuant to Fed.R.Crim.P. 11(e)(1)(C) or was non-binding under Rule 11(e)(1)(B). The record refers to both a "recommendation of two years imprisonment" and to a "24 mo. sentencing cap." Therefore, we remand to the district court so that it can determine whether it was bound by the plea agreement to accept a cap of twenty-four months imprisonment. If so, then twenty-four months imprisonment plus a 180–day period of home confinement violated that agreement.

## IV

We conclude that conditions 4 and 6–13 (the sex offender conditions) of T.M.'s supervised release are invalid because they are not reasonably related to the goals of supervised release. Condition 3 must be reconsidered because T.M. did not have proper notice that the court was considering such a condition. Further proceedings are also required with respect to condition 14 in order to determine whether the period of home confinement it imposes violates the plea agreement. We accordingly vacate T.M.'s sentence and remand for resentencing not inconsistent with this opinion.

**SENTENCE VACATED; REMANDED FOR RESENTENCING.**