**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 2, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

WALLACE DEAN VINSON,

    Defendant - Appellant.

No. 04-5039

(N. D. Oklahoma)
(D.C. No. CR03-CR-098-P)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, Circuit Judge, **LUCERO**, Circuit Judge, and **BRACK,**[**] District Judge.

Wallace Dean Vinson appeals the district court's sentence of thirty months of imprisonment, which also included seven supervised release conditions. Mr. Vinson argues that the district court erred in (1) calculating the amount of loss for his offense, and determining facts that increased the maximum sentence to which he was subject under the Guidelines, in violation of the Supreme Court's ruling in

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10TH CIR. R. 36.3.

[**] The Honorable Robert C. Brack, District Judge, United States District Court for the District of New Mexico, sitting by designation.

*Blakely v. Washington*, 124 S. Ct. 2531 (2004), and (2) imposing special sex offender conditions of supervised release that were not reasonably related to the controlling statutory factors and were too restrictive upon his liberty. He asks us to vacate his sentence, remand for re-sentencing, and remove the sex offender conditions on his supervised release. Our jurisdiction arises under 28 U.S.C. § 1291. We conclude that (1) there is no violation of *Blakely* or its progeny and (2) the district court did not abuse its discretion when it imposed the special offense conditions. Thus, we affirm Mr. Vinson's conviction and sentence.

## I. BACKGROUND

Mr. Vinson was hired as President of Rockland International in 1999. Rockland International Corporation, based in Tulsa, Oklahoma, manufactured environmentally safe products and published books on health and nutrition. In 2000, he transferred to the parent company, Rockland Corporation, as vice-president of sales. With Mr. Vinson's assistance, Rockland established a business relationship with a company called Renaissance For Life ("RFL"). Mr. Vinson became the primary contact person with RFL. During 2000 and 2001, Mr. Vinson diverted approximately $159,990.72 in payments sent by RFL to Rockland into his own accounts for personal use.

The government issued a twelve-count indictment against Mr. Vinson for

subscribing to a false tax return, wire fraud, and mail fraud. The indictment against Mr. Vinson listed Rockland's loss at approximately $77,000. On September 26, 2003, Mr. Vinson pleaded guilty to all charges.

At the change of plea hearing, the district court asked defense counsel for his loss calculations, and he replied: "I think we have some issues . . . with the amount of the actual loss to the company. I think [the government is] saying about $208,000.00. We might wish to present the Court with some different figures . . . , but other than that, it's pretty close to what we are saying." Change of Plea Tr. ("COP"), at 14-15. The district court informed Mr. Vinson that it is "not unusual when the Probation Office prepares a Presentence Report ["PSR"], and that's the report I rely on for the purpose of sentencing, that the guidelines turn out to be different than has been estimated by the attorneys today . . . . Do you understand that?" *Id.* at 17-18. Mr. Vinson replied: "Yes, I do, Your Honor." *Id.* at 18. Mr. Vinson then told the court that he would "like to state I don't agree with the amounts, but I'm sure we'll settle that; but I do agree with the charges and I take full responsibility for it." *Id.* at 27. During the sentencing hearing, when the district court gave Mr. Vinson the opportunity to make a statement, he acknowledged "I did violate my trust or their trust." Sent. Tr. at 16.

In calculating Mr. Vinson's sentence under the Guidelines, the district court adopted the recommendations in the PSR and its addendum. The district

court found the amount of loss was $159,990.72, and Mr. Vinson did not object to this amount. Because the total loss was between $120,000 and $200,000, the district court increased Mr. Vinson's base offense level by ten points. It also applied a two-level adjustment for his abuse of trust, under U.S.S.G. § 3B1.3. Mr. Vinson does not challenge this adjustment.

The district court calculated Mr. Vinson's total offense level to be 17, with a criminal history category II and an applicable Guidelines range of 27 to 33 months' imprisonment. The district court sentenced Mr. Vinson to 30 months' imprisonment and ordered payment of restitution in the amount of $159,990.72. When it announced the sentence, the district court noted that "[a] sentence in the middle of the guideline range is being imposed because there are no aggravating or mitigating circumstances that have not been taken into account in determining the guideline range for the instant offense." Sent. Tr. at 18.

The district court also imposed three years of supervised release and several special sex offender conditions based on Mr. Vinson's prior criminal history. The district court instructed Mr. Vinson (1) to register as a sex offender in accordance with state law; (2) to participate in sex offender and/or mental health treatment as directed by the probation officer, including submission to a risk assessment and psychological testing; (3) not to have contact with children under the age of eighteen without the prior written permission of the probation

officer; (4) not to engage in any occupation, business, or profession where he would have access to children under the age of eighteen without prior written approval of the probation officer; (5) not to loiter within one hundred feet of schools, parks, playgrounds, arcades, or other places frequented by children; (6) not to possess sexually stimulating or sexually oriented material as deemed inappropriate by the probation officer; and (7) not to subscribe to or use any Internet service without first receiving written permission from his probation officer.

Mr. Vinson pleaded guilty in 1994 in California to three felony sex crimes: two counts of a lewd act with a minor and one count of sexual intercourse with a minor. The convictions were based on a single event in which Mr. Vinson had sexual relations with an underage hitchhiker. He served six months in jail and was placed on probation for five years, during which time he registered as a sex offender in California and reportedly underwent psychological testing. The record does not indicate that he registered as a sex offender in Oklahoma or Texas, where he resided before being sentenced in this matter.              .

On appeal, Mr. Vinson argues that (1) his sentence should be vacated in light of *Blakely*, and (2) the district court abused its discretion in imposing special sex offender conditions during his supervised release.

## II. DISCUSSION

### A.  *Booker* error

Mr. Vinson was sentenced before the Supreme Court's decisions in *Blakely* and *United States v. Booker*, 125 S. Ct. 738 (2005).  "When the defendant raised *Blakely* before this court, the Supreme Court had not yet issued *Booker*.  We nonetheless apply both cases."  *United States v. Dalton*, 409 F.3d 1247, 1249 n.1 (10th Cir. 2005).

In *Booker*, the Supreme Court applied its holding in *Blakely* to the federal Sentencing Guidelines and reaffirmed its holding in *Apprendi,* stating that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."  125 S. Ct at 756.  Moreover, the holding in  *Booker* "makes the Guidelines effectively advisory."   *Id.* at 757.  In other words,  *Booker* "requires a sentencing court to consider Guidelines ranges, . . . but it permits the court to tailor the sentence in light of other statutory concerns as well,   *see* [18 U.S.C.] § 3553(a) (Supp. 2004)."   *Id.*

In addition, the Supreme Court in *Booker* held that "both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act [apply] to all cases on direct review." *Id.* at 769.  After *Booker*, we have analyzed cases

on direct review in terms of non-constitutional and constitutional error. *See*

*United States v. Gonzalez-Huerta*, 403 F.3d 727, 731-32 (10th Cir. 2005) (en

banc). "[A] court could err by relying upon judge-found facts, other than those of

prior convictions, to enhance a defendant's sentence mandatorily. As *Booker*

makes clear, the Sixth Amendment prohibits this practice." *Id.* at 731.

A sentencing court commits "non-constitutional *Booker* error" by "applying

the Guidelines in a mandatory fashion, as opposed to a discretionary fashion, even

though the resulting sentence was calculated solely upon facts that were admitted

by the defendant . . . or based upon the fact of a prior conviction." *Id.* at 731-32.

Although this type of sentence does not violate the defendant's Sixth Amendment

rights, it is "nonetheless impermissible because the Court [in *Booker*] severed the

portion of the Sentencing Reform Act that required the mandatory application of

the Guidelines." *Id.* at 732. Because Mr. Vinson briefed his appeal before

*Booker* was decided, we shall consider both constitutional and non-constitutional

*Booker* error.

        1.     Constitutional *Booker* error

Mr. Vinson argues that the district court's determination of the amount of

loss is constitutional *Booker* error because the district court engaged in fact-

finding, based upon a preponderance of evidence, to support the loss calculation.

He suggests that the amount of loss should be $77,000, as alleged in the

indictment. This lower loss calculation would result in an eight-level (rather than ten-level) adjustment under Section 2B1.1 of the Guidelines, and would reduce his Guidelines range to 21 to 27 months. Because Mr. Vinson did not raise a constitutional challenge to the judge's finding of the loss amount at sentencing, we review the district court's finding for plain error. *See Gonzalez-Huerta*, 403 F.3d at 732. The Supreme Court has outlined four factors to determine whether the district court committed plain error: 1) whether there was error; 2) whether the error was plain, that is clear or obvious at the time of appeal; 3) whether the error was prejudicial, that is, it affected the substantial rights of the defendant; and 4) whether the error seriously affected the fairness, integrity or public reputation of judicial proceedings. *See United States v. Olano*, 507 U.S. 725, 732 (1993); *Gonzalez-Huerta*, 403 F.3d at 732.

Mr. Vinson satisfies the first two prongs of plain error review because "the *Booker* Court excised 18 U.S.C. § 3553(b)(1), thereby rendering the Guidelines discretionary," which made the district court's mandatory application of the Guidelines "plain" error that is clear and obvious on appeal. *Gonzalez-Huerta*, 403 F.3d at 732. The primary issue in this case, therefore, is whether Mr. Vinson can meet the third and fourth prongs of plain error review.

To satisfy the third prong, the appellant bears the burden of showing that the error affected his "substantial rights." *Id.* "[T]he appellant must show 'a

reasonable probability that, but for the error claimed, the result of the proceeding would have been different.'" *Id.* (citing *United States v. Dominguez Benitez*, 124 S. Ct. 2333, 2339 (2004)).

> In a case of constitutional *Booker* error, there are at least two ways a defendant can make this showing. *First*, if the defendant shows a reasonable probability that a jury applying a reasonable doubt standard would not have found the same material facts that a judge found by a preponderance of the evidence, then the defendant successfully demonstrates that the error below affected his substantial rights. This inquiry requires the appellate court to review the evidence submitted at the sentencing hearing and the factual basis for any objection the defendant may have made to the facts on which the sentence was predicated. *Second*, a defendant may show that the district court's error affected his substantial rights by demonstrating a reasonable probability that, under the specific facts of his case as analyzed under the sentencing factors of 18 U.S.C. § 3553(a), the district court judge would reasonably impose a sentence outside the Guidelines range.

*United States v. Dazey,* 403 F.3d 1147, 1175 (10th Cir. 2005) (footnotes omitted) (emphasis added).

We first inquire whether there is a reasonable probability that a jury, applying a beyond-a-reasonable-doubt standard, would not have found that the amount of loss was at least $120,000, as the district court did when applying a preponderance-of-the-evidence standard. At the change of plea colloquy, Mr. Vinson's counsel suggested that he "might wish to present the Court with some different figures" with respect to the $208,000 loss calculation provided by the government. COP, at 14-15. Mr. Vinson's counsel went on to state that "[the government's figure is] pretty close to what we are saying." *Id.* The district

-9-

court informed Mr. Vinson that "what I hear is that there is essentially an agreement as to what the calculations are, except for perhaps the amount involved in the mail and wire fraud, and perhaps what I would call minor issue in regard to the income tax violations charges." *Id.* at 15. Mr. Vinson did not object to the PSR's calculation of the amount of loss of $169.990.72, nor did he object at the sentencing hearing. We also note that restitution was set at $159,990.72. We hold that the record indicates there is little likelihood that a jury would not reach the same conclusion beyond a reasonable doubt.

Mr. Vinson also has not met his burden to demonstrate a reasonable probability that, under the specific facts of his case as analyzed under the sentencing factors of 18 U.S.C. § 3553(a),[3] the district court would have

---

[3] Factors to be considered in imposing sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider–

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and

reasonably imposed a sentence outside the Guidelines range under a post-*Booker* advisory regime. The district court's comment when it imposed Mr. Vinson's sentence makes this clear. The district court recognized its discretion to sentence within the Guidelines range when it sentenced Mr. Vinson to thirty months of imprisonment: "[a] sentence in the middle of the guideline range is being imposed because there are no aggravating or mitigating circumstances that have not been taken into account in determining the guideline range for the instant offense." Sent. Tr. at 18; *see United States v. Nguyen,* 413 F.3d 1170, 1184 (10th

---

      (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the kinds of sentence and the sentencing range established for–

      (A)     the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . .

(5)     any pertinent policy statement–

      (A)     issued by the Sentencing Commission . . . .

(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Cir. 2005) (noting that the district court's "generalized comments" about sentencing discretion were "more an acknowledgment of his desire to exercise discretion within a Guideline range generally appropriate for the crime committed; it is not a clear expression of a desire or willingness to depart downward"). As in *Nguyen,* the district court's statement here is not "linked to any § 3553(a) factor to indicate the court would exercise additional discretion if it could to impose a lower sentence." *Id.* at 1184-85.

We conclude that judicial fact-finding of the amount of loss did not affect Mr. Vinson's substantial rights under the third prong of the plain error test. Therefore, we need not consider whether he satisfies the fourth prong of the test. Mr. Vinson fails to satisfy the plain error test for constitutional *Booker* error.

2. Non-constitutional *Booker* error

Mr. Vinson's arguments, when construed as non-constitutional *Booker* error, similarly fail. To satisfy the third prong of *Olano,* Mr. Vinson must show that the district court's mandatory application of the Guidelines affected his substantial rights based on the record on appeal. *Gonzalez-Huerta*, 403 F.3d at 733. We need not decide whether Mr. Vinson can demonstrate that his substantial rights were affected, because he is unable to satisfy the more daunting fourth prong of *Olano.* Under *Olano*, he must establish that the sentence offended the "core notions of justice," thus requiring us to exercise our discretion to notice the

plain error under the fourth prong. *Gonzalez-Huerta.* 403 F.3d at 739. "Our analysis under this fourth prong when an error is non-constitutional is not flippant or perfunctory; the standard is formidable, as we will only exercise our discretion when an error is 'particularly egregious' and the failure to remand for correction would produce a 'miscarriage of justice.'" *United States v. Trujillo-Terrazas*, 405 F.3d 814, 820 (10th Cir. 2005) (quoting *Gonzalez-Huerta*, 403 F.3d at 736). This demanding standard is not met here.

Even in applying the Guidelines in a mandatory way, the district court retained discretion to impose a sentence on Mr. Vinson anywhere in that applicable Guidelines range. The district court exercised that discretion by imposing a sentence of 30 months' imprisonment, which fell in the middle of the applicable range of 27 to 33 months. In doing so, the district court rejected Mr. Vinson's request for a sentence at the lowest end of the range. There is, then, no "reason to think that the district judge would have imposed a less severe sentence in the exercise of his post-*Booker* discretion." *United States v. Riccardi*, 405 F.3d 852, 876 (10th Cir. 2005). Furthermore, there is no indication in the sentencing transcript that the district court would have sentenced Mr. Vinson to a lesser term if the Guidelines were not mandatory at that time.

Thus, because Mr. Vinson's sentencing error does not constitute plain error, we need not remand for resentencing in light of *Booker.*

### B.    The supervised release conditions

#### 1.    Standard of review

Our review of the imposition of supervised release conditions is a complicated one.  Although the Sentencing Guidelines are now "effectively advisory," the Sentencing Reform Act as modified "requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns as well." *Booker*, 125 S. Ct. at 757.   This language suggests that the Guidelines and § 3553 still have major relevance in determining the reasonableness of sentences.  Of course, § 3553 already applied to conditions of supervised release.  18 U.S.C. § 3583(d).  "District courts enjoy broad discretion in fashioning conditions of supervised release." *United States v. Bartsma*, 198 F.3d 1191, 1200 (10th Cir. 1999).   Yet, our deference to the district court is not wholesale:

> A sentence for supervised release should be, at minimum, remanded if a district court fails to give its reasons for imposing the sentence on the record. When the district court has not given its reasons for the imposition of a sentence on the record, we decline to enter the zone of appellate speculation in reviewing for abuse of discretion.

*United States v. Kravchuk*, 335 F.3d 1147, 1159 (10th Cir. 2003) (internal quotation marks and citations omitted).

> [The] conditions must "involve no greater deprivation of liberty than is reasonably necessary" to deter criminal conduct, protect the public, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. . . . [T]he conditions must

[also] be "reasonably related to the nature and circumstances of the offense and the history and characteristics of the defendant."

*United States v. Fabiano*, 169 F.3d 1299, 1307 (10th Cir. 1999) (quoting 18 U.S.C. §§ 3553(a)(1)-(2), 3583(d)(1)).  "The § 3553(a) factors are fairly broad, but they do impose a real restriction on the district court's freedom to impose conditions on supervised release."  *United States v. Pruden,* 398 F.3d 241, 248 (3d Cir. 2005).  "An appellate court should not be left to speculate about the nexus between the condition and the nature and circumstances of the offense." *Bartsma*, 198 F.3d at 1200.

Furthermore, a special condition must also involve "no greater deprivation of liberty than is reasonably necessary for the purposes" of sentencing, and it must be "consistent with any pertinent policy statements" in the Guidelines.  18 U.S.C. § 3583(d)(2)-(3); U.S.S.G. § 5D1.3(b).  Accordingly, the district court's "broad discretion in tailoring conditions of supervised release to meet the specific circumstances of a given case" is not "untrammelled," *United States v. Germosen*, 139 F.3d 120, 131 (2d Cir. 1998) (internal quotation marks omitted), and we should  "carefully scrutinize unusual and severe conditions," *United States v. Sofsky*, 287 F.3d 122, 126 (2d Cir. 2002) (quotation marks omitted).

2.    Special Sex Offender Conditions

Here, the U.S. Probation Office asked the district court to impose "Special Sex Offender Conditions" upon Mr. Vinson.  These conditions required, among

others things, (1) registration as a sex offender in accordance with state law; (2) participation in sex offender treatment and payment for the treatment, conducted by therapists approved by the probation office; (3) no contact with children younger than eighteen, and a requirement that any contact with children be reported to the probation office; (4) a restriction on occupation, including one with access to children, without prior approval of the probation office; (5) prohibition from being in parks, schools, or playgrounds; (6) prohibition from possessing any reading or viewing material that the probation office deems is inappropriate; (7) certain clothing restrictions that apply in public and at home, if another person is present; (8) prohibition from being around the "victim," except as approved by the probation office; (9) deference to the probation office to require that the defendant post a sign on the door of his home stating that he can have no contact with people under the age of eighteen; (10) deference to the probation office to require the defendant to be incarcerated in a Community Corrections Center for up to one year or until the probation officer will release him; (11) prohibition of access to Internet service without approval by the probation office; and (12) prohibition from drinking or possessing alcohol or any intoxicating beverages.

After the district court heard arguments regarding Mr. Vinson's objections to the sex offender conditions, it modified the proposed sex offense conditions

and deleted conditions (7), (8), (9), (10), and (12).  The district court overruled

Mr. Vinson's objections as to the remaining seven conditions, and determined

these to be appropriate based on his prior conviction for a sex offense.  It stated:

> The Court recognizes that the proposed "Special Sex Offender Conditions" are unrelated to the instant offense.  However, they are appropriate due to the defendant's prior conviction for a sex offense.  The special sex offender conditions bear a reasonable relationship to the defendant's history and characteristics.  Therefore, the Court will impose some of the standard sex offender conditions or a modified version of those conditions.

Sentencing Tr. at 11-12.  The district court did not appear to address the

conditions' relationship to Mr. Vinson's deprivation of liberty.

Mr. Vinson objects to the imposition of sex offender conditions for two

reasons: (1) "the history and characteristics were remote and nothing existed to

support a legitimate concern that Mr. Vinson will be a sex offender at the time of

release from imprisonment," and (2) the conditions involve a greater deprivation

of liberty than is reasonably necessary.  Aplt's Br. at 18-22.  Mr. Vinson argues

that he does not have the extensive history of sex offenses that would trigger the

imposition of these conditions.  His sex offense conviction stemmed from a single

incident that occurred more than a decade ago.  Furthermore, he has received

treatment in California as part of his sentence, and he has not committed any sex

offenses since that time.

In imposing the sex offender conditions, the district court relied upon

*United States v. Barajas*, 331 F.3d 1141 (10th Cir. 2003), where a court imposed

conditions based upon the history and characteristics of the defendant. There, the

defendant pleaded guilty to a firearms offense, and the district court imposed two

conditions on his supervised release that were not related to the offense of

conviction: (1) the defendant had "to make regular monthly child support

payments in accordance with [any] payment plan established by state authorities,

and to pay the $7,890 he owed in child support arrearages," and (2) the defendant

had to "participate in an approved program for mental health, which may include

psychological counseling . . . at the direction of the U.S. Probation Officer." *Id.*

at 1143 (quotation marks omitted).

We noted that the requirement to pay child support was reasonably related

to the history and characteristics of the defendant since the defendant had failed

to pay child support in the past. *Id.* at 1147. Moreover, we upheld the imposition

of psychological testing as a condition due to the "defendant's history of incidents

involving threats and violence," which included five prior convictions for assault,

battery, domestic violence, and other violent incidents that did not result in

conviction. *Id.* at 1143, 1147. Though the conditions imposed did not relate to

the firearms conviction, the district court did not abuse its discretion because the

conditions related to the history and characteristics of Mr. Barajas.

Here, the first condition the district court imposed on Mr. Vinson required

him to register as a sex offender in accordance with state law. The district court expressed concern that Mr. Vinson apparently had not registered as a sex offender in either Oklahoma or Texas, where he had lived since moving from California. This condition appears to relate to the history and characteristics of Mr. Vinson since many state laws require sex offenders to register with the State when they move from one state to another.

Second, the district court required Mr. Vinson to "participate in sex offender and/or mental health treatment as directed by the probation officer." Aple's Br., ex. E, at 3 (Judgment, filed Mar. 10, 2004). Section 5D1.3(d)(7) of the Guidelines indicates that such a condition is appropriate "[i]f the *instant offense* of conviction is a sex offense." (emphasis supplied). The government argues that, apart from one exhibit, Mr. Vinson presented no evidence that he actually participated in any psychological counseling after the California conviction. *See* Aple's Br., ex. D (Order Granting Probation and Judgment for Monetary Penalties, filed May 20, 1994). In addition, the government asserts that the district court, having considered *Barajas*, has already tailored the sexual offender conditions by striking five of the recommended conditions. Finally, the government cites factors from § 3553(a), including deterrence, education, vocational training, and other correctional treatment, to support the sex offender and/or mental health treatment condition.

We recognize that Mr. Vinson's prior conviction in California was for a nearly decade-old sex offense. As noted, the district court was concerned with Mr. Vinson's apparent failure to register as a sex offender in either Oklahoma or Texas, the states in which he had resided since moving from California. Furthermore, he presented no evidence that he completed or participated in the California sex offender program. Finally, the condition requires "sex offender and/or mental health treatment as directed by the probation officer including submission to a risk assessment and psychological testing." Aple's Br., ex. E, at 3. Mr. Vinson must therefore participate in treatment only if, after appropriate assessment and testing, the probation officer so directs. The district court was aware of the need for and purpose of rehabilitation, if deemed necessary after testing. We presume that the probation officer will enforce this condition with appropriate discretion and, if necessary, direct treatment that involves no more deprivation of liberty than is reasonably necessary. In sum, the district court considered the public safety implications of Mr. Vinson's previous conduct and did not abuse its discretion in imposing the second condition.

The third, fourth, and fifth conditions prevent Mr. Vinson from having contact with children under the age of eighteen, engaging in any business where he could have access to children under the age of eighteen, and from being within 100 feet of parks, schools, or playgrounds frequented by children under the age of

eighteen, without prior permission from his probation officer. Although removed, we agree that these three conditions appear reasonably related in a "tangible way" to Mr. Vinson's particular history and characteristics. *United States v. Evans*, 155 F.3d 245, 249 (3d Cir. 1998); *but cf. United States v. T.M.*, 330 F.3d 1235, 1240 (9th Cir. 2003) (striking several sex offender conditions, including one restricting interaction with anyone under the age of eighteen, noting that "[s]upervised release conditions predicated upon twenty-year-old incidents, without more, do not promote the goals of public protection and deterrence" and "[t]he fact that [the defendant] has lived the last twenty years without committing a sex offense suggests that he no longer needs to be deterred or shielded from the public"). Moreover, these restrictions, although a liberty infringement, are not a wholesale deprivation of Mr. Vinson's liberty. We again presume that Mr. Vinson's probation officer will be reasonable in exercising discretion and will not prevent him from seeing his grandchildren, who are under the age of eighteen. These conditions, therefore, do not constitute an unreasonable deprivation of liberty and the district court did not abuse its discretion when it imposed these conditions.

The sixth condition prevents Mr. Vinson from possessing "sexually oriented" material as deemed inappropriate by the probation officer. Although this limitation may be vague, it does not unduly restrict his liberty and is an appropriate basis to protect the public and to promote rehabilitation. *See United*

*States v. Wise,* 391 F.3d 1027, 1034 (9th Cir. 2004) (urging that conditions be tailored on remand "[b]ecause the prohibition on sexually oriented and sexually stimulating materials might arguably include women's magazines with sexual how-to articles and bodice-ripper romance novels available at any grocery store"); *United States v. Bee*, 162 F.3d 1232, 1235 (9th Cir. 1998) (holding that a restriction on possession of sexually oriented material "was designed to promote [the defendant's] rehabilitation and to protect the public"). We presume that the probation officer will act reasonably so as not to deprive Mr. Vinson of his liberty.

Finally, the seventh condition prohibits Mr. Vinson from using any Internet service without first receiving written permission from his probation officer. Unlike a complete ban on access to the Internet, *see United States v. White*, 244 F.3d 1199, 1201 (10th Cir. 2001), the condition here "more readily accomplishes the goal of restricting use of the Internet and more delicately balances the protection of the public with the goals of sentencing." *United States v. Walser*, 275 F.3d 981, 988 (10th Cir. 2001) (holding that a condition restricting use of the Internet, requiring probation office approval, did not amount to plain error).

In *Walser*, however, we noted that outside of a plain error inquiry,

it may nevertheless be questionable whether the condition imposes "no greater deprivation of liberty than is reasonably necessary" to meet the goals referred to in 18 U.S.C. § 3583(d), since the vagueness of the special condition *leaves open the possibility that the probation office*

-22-

*might unreasonably prevent [the defendant] from accessing one of the central means of information-gathering and communication in our culture today.*

*Id.* (emphasis added).

We note that most other circuit courts that have addressed the issue have (1) either rejected total Internet bans as conditions of supervised release, *see United States v. Holm*, 326 F.3d 872, 877-78 (7th Cir. 2003); *United States v. Sofsky*, 287 F.3d 122, 126-27 (2d Cir. 2002), or (2) have allowed Internet bans only where the ban can be lifted at the discretion of a probation officer*, see United States v. Fields*, 324 F.3d 1025, 1027 (8th Cir. 2003); *United States v. Zinn*, 321 F.3d 1084, 1093 (11th Cir. 2003); *United States v. Crandon,* 173 F.3d 122, 127-28 (3d Cir. 1999). *But see United States v. Paul*, 274 F.3d 155, 169-70 (5th Cir. 2001) (rejecting the Tenth Circuit's approach in *White* and upholding a strict ban on computer and Internet usage for a defendant convicted of possessing a computer hard drive containing child pornography).

We acknowledge that this condition may restrict Mr. Vinson's access to a mode of technology that has become essential to modern-day life. Modern technology, however, allows the probation officer to grant Mr. Vinson limited access to the Internet so that he can use the Internet for work or personal reasons without viewing sexually explicit material. For instance, the probation officer may order Mr. Vinson to install filters to block sexual material on his home and

-23-

office computers.

Despite the ability to provide limited and monitored access to the Internet, we must reiterate that

> [t]he government presented no evidence that [Mr. Vinson] has a propensity to commit any future sexual offenses, or that [he] has repeated this behavior in any way since his [previous] conviction. Therefore, the special conditions seem unlikely to serve the goals of deterrence or public safety, since the behavior on which the special conditions are based, though highly reprehensible, has ceased.

*United States v. Scott*, 270 F.3d 632, 636 (8th Cir. 2001); *see also United States v. Peterson*, 248 F.3d 79, 83 (2d Cir. 2001) (vacating Internet and sex offender conditions imposed as part of bank larceny sentence because conditions were vague and "[t]here [wa]s no indication that [the defendant's] past incest offense had any connection to computers or to the Internet"). Given these admonishments, we do not conclude, however, that the district court abused its "broad discretion" to impose this condition of supervised release. *Germosen*, 139 F.3d at 131. We leave the enforcement of this Internet-service condition to Mr. Vinson's probation officer and assume that, with the proper exercise of discretion, the officer will implement this condition without a greater intrusion of Mr. Vinson's liberty than is necessary.

## III.  CONCLUSION

We conclude that Mr. Vinson's sentencing error does not constitute plain

-24-

error, and he is not entitled to resentencing in light of *Blakely* and *Booker*. We also conclude that the district court did not abuse its discretion when it imposed the sex offender supervised release conditions. We therefore AFFIRM Mr. Vinson's conviction and sentence.

**PER CURIAM**.