**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

PAUL GLEN HOHAG,
*Defendant-Appellant.*

No. 17-30049

D.C. No.
3:16-cr-00118-SI-1

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted June 7, 2018
Portland, Oregon

Filed June 28, 2018

Before: Susan P. Graber and Milan D. Smith, Jr., Circuit
Judges, and Alvin K. Hellerstein,* District Judge.

Opinion by Judge Graber

---

*The Honorable Alvin K. Hellerstein, United States District Judge for
the Southern District of New York, sitting by designation.

**SUMMARY**[**]

**Criminal Law**

The panel affirmed the district court's imposition of supervised release conditions requiring that the defendant participate in a sex offense-specific assessment and that, if recommended by a probation officer, he submit to polygraph testing in conjunction with the assessment.

The panel held that the district court did not abuse its discretion in imposing the conditions because they (1) are not particularly burdensome; and (2) do not rest solely on the defendant's 27-year-old rape conviction, but relate primarily to the risks indicated by his recent crime of conviction, failure to register as a sex offender.

**COUNSEL**

Francesca Freccero (argued), Assistant Federal Public Defender, Portland, Oregon, for Defendant-Appellant.

Amy E. Potter (argued), Assistant United States Attorney, Eugene, Washington; Gary Y. Sussman, Assistant United States Attorney; Kelly A. Zusman, Appellate Chief; Billy J. Williams, United States Attorney; United States Attorney's Office, Portland, Oregon; for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

GRABER, Circuit Judge:

Defendant Paul Glen Hohag pleaded guilty to failure to register as a sex offender, in violation of the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250(a). The district court imposed a prison sentence of time served. The court also ordered, as conditions of supervised release, that Defendant participate in a sex offense-specific assessment and that, if recommended by a probation officer, Defendant submit to polygraph testing in conjunction with that assessment. We affirm.

FACTUAL AND PROCEDURAL HISTORY

In 1992, Defendant was convicted of raping his stepsister, who was 8 years old at the time of the offense. During the proceedings, Defendant admitted to having molested another young girl and claimed to have attended counseling after that incident. Ultimately, the court hearing Defendant's 1992 case sentenced him to a period of imprisonment followed by a period of community supervision. The court required, as a condition of community supervision, that Defendant register as a sex offender.

In 2011, Defendant registered as a sex offender in Washington. He later moved to California, though, and failed to register there or update his Washington registration. Officers thus issued a warrant for his arrest. In the meantime, Defendant moved again, this time to Oregon. He failed to register there, too, and again neglected to update his Washington registration. Officers eventually arrested

Defendant in Oregon in 2016, and the government charged him with failure to register as a sex offender.

Defendant pleaded guilty. At sentencing, Defendant informed the court that he had undergone sex offender treatment while incarcerated for his 1992 rape offense. He also provided the court with the results of a polygraph examination, which stated that he was truthful in denying that he had sexual contact with a minor since his release from supervision in 2002.

The district court imposed a prison sentence of time served. The court also ordered, as conditions of supervised release, that Defendant "participate in a sex offense-specific assessment" and that he "submit to polygraph testing at the discretion of [his] probation officer, in conjunction with the sex offender specific assessment." In explaining its decision to impose those conditions, the court explicitly acknowledged that almost 27 years had passed since Defendant's rape conviction. The district court nevertheless viewed Defendant's failure to register as "a very serious offense" suggesting that Defendant might pose a present risk to the public. The court therefore imposed the assessment conditions "to ensure that there [was] no risk to the community that might somehow have been indicated by the failure to register."

Defendant timely appeals, challenging only the two conditions of supervised release that relate to his history of sexual misconduct.

STANDARD OF REVIEW

We review for abuse of discretion a district court's decision to impose a condition of supervised release. *United States v. Johnson*, 697 F.3d 1249, 1251 (9th Cir. 2012).

DISCUSSION

District courts have "wide discretion to impose conditions of supervised release." *United States v. T.M.*, 330 F.3d 1235, 1239–40 (9th Cir. 2003). As a general rule, a district court may impose a condition of supervised release if it "'involves no greater deprivation of liberty than is reasonably necessary' to punish, deter, protect the public from or rehabilitate the defendant." *Johnson*, 697 F.3d at 1251 (quoting 18 U.S.C. § 3583(d)(2)). The condition also should relate to the nature and circumstances of the defendant's offense and to the defendant's history and personal characteristics. *Id.* Importantly, those factors serve as a "guide," not "a checklist of requisites." *Id.* (quoting *United States v. Johnson*, 998 F.2d 696, 698 (9th Cir. 1993)).

Two of our cases—*T.M.* and *Johnson*—bear heavily on our analysis of the conditions at issue here. In both cases, a district court relied on a defendant's long-past sex offense to impose one or more conditions on the defendant's supervised release. Yet we vacated the conditions at issue in *T.M.* and approved of the one at issue in *Johnson*.

Explaining why we reached different results in those two cases requires an understanding of their facts. We begin with *T.M.* In 1961, the government charged T.M. with molesting a teenage girl. 330 F.3d at 1237. And, in 1981, T.M. kidnapped an 8-year-old girl, took pictures of her nude, and

allegedly penetrated her with two fingers. *Id.* Years later, in 1996, T.M. pleaded guilty to a drug crime, for which the district court sentenced him to a period of probation subject to, among other terms, the condition that he undergo psychological treatment relating to his sexual misconduct. *Id.* at 1237–38.

T.M. violated the terms of his probation repeatedly. *Id.* at 1238. Importantly, though, none of his violations related to his history of sexual misconduct or to his psychological treatment. *Id.* Eventually, in 2001, the district court revoked T.M.'s probation, sentenced T.M. to a period of imprisonment, and imposed a number of conditions on his supervised release—nine of which related to his history of sexual misconduct. *Id.* at 1238–39. The conditions required, among other things, that T.M. undergo polygraph testing, participate in treatment, not possess any type of camera or recording device, and not possess or use computers with certain capabilities. *Id.* On appeal, we held that T.M.'s sex offenses—the most recent of which had occurred approximately 20 years before the district court imposed the conditions at issue—were too remote in time to support those conditions. *Id.* at 1240–41.

In *Johnson*, the defendant pleaded guilty to possessing a firearm despite his status as a felon. 697 F.3d at 1250. Almost 20 years earlier, a jury had convicted Johnson of raping a 14-year-old girl at gunpoint. *Id.* And 30 years earlier, a jury had convicted him of raping a 19-year-old girl. *Id.* Relying on those offenses, the district court sentenced Johnson to five years of supervised release subject to the condition that Johnson undergo a sex offender assessment. *Id.* We affirmed on appeal, despite the fact that Johnson's

sexual offenses were about as dated as those involved in *T.M.* *Id.* at 1251.

Several distinctions explain those seemingly conflicting conclusions. For one, there were nine conditions at issue in *T.M.*, in contrast to the single condition at issue in *Johnson*. And many of the conditions in *T.M.* were substantively far more stringent than the condition at issue in *Johnson*. As we explained in *Johnson*, sex offender *treatment* imposes a "very significant restraint[] on liberty," whereas a mere *assessment* constitutes "a much less significant restraint." *Id.* Further, in *Johnson*, the record did not reveal whether Johnson had undergone sex offender treatment, whereas in *T.M.* the record "included detailed information regarding [T.M.'s] progress in his sexual offense treatment." *Id.* Accordingly, there was a greater need for further information in Johnson's case. Finally, Johnson's conviction for possession of a firearm *related* to his prior sex offenses: Johnson had used a gun in raping one of his victims. *Id.* No similar link existed in *T.M.*, in which T.M.'s probation violations had "no significant relation to [his] sex offender status." 330 F.3d at 1240–41.

Together, *T.M.* and *Johnson* illustrate that, when we consider a condition of supervised release meant to address a defendant's history of sexual misconduct, we look to at least two factors. First, as in every case, we consider the burdensomeness of the condition at issue. An assessment is significantly less burdensome than required treatment.

Second, we ask whether the condition is reasonably necessary to accomplish one of the legitimate goals of supervised release. In answering that question in this context, we approach with some skepticism a condition that rests solely on an old sex offense. But when some *recent* event

suggests that a defendant still poses a risk of engaging in sexual misconduct, there exists a greater need for a condition meant to address a defendant's history of sexual misconduct. As we explained in *T.M.*, such "recent relevant events may revive old offenses and justify the imposition of supervised release conditions related to sex offender status." 330 F.3d at 1240–41. *Johnson* illustrates that principle. Because Johnson had used a firearm in raping one of his victims, his conviction for possession of a firearm suggested that he might pose a risk of re-offending. *Johnson*, 697 F.3d at 1251. *Johnson* teaches, though, that a condition need not *necessarily* relate directly to the offense of conviction to withstand review. We also note that, if the district court already has at its disposal a detailed record of the defendant's history of sex offender treatment, the need to order an assessment is diminished.

Whether a condition withstands review remains a case-by-case inquiry. Thus, additional factors might bear on our analysis. But *Johnson*'s and *T.M.*'s principles provide a starting point and, having described them, we turn to the case at hand.

Beginning with the nature of the restraints at issue, Defendant faces a relatively minimal burden on his liberty. For now, he must undergo only an assessment, which may or may not lead to further treatment. Such limited initial assessments, although not entirely unintrusive, impose a fairly mild restraint on liberty. In fact, such assessments permit district courts to make more informed decisions and, in that way, can actually *protect* a defendant's liberty interests. *See United States v. Bainbridge*, 746 F.3d 943, 953 (9th Cir. 2014) (explaining that sex offender assessments safeguard defendants' liberty interests by allowing courts to

be "sure that further conditions [are] necessary before ordering them").

Further, the possibility that Defendant's assessment may include polygraph testing does not make the assessment overly burdensome. We have previously characterized polygraph testing as a relatively unintrusive means of evaluating a defendant's risk of engaging in sexual misconduct. *United States v. Weber*, 451 F.3d 552, 568 (9th Cir. 2006). Further, Defendant is required to undergo polygraph testing only insofar as it assists in his assessment.

On the whole, then, the conditions here are much like the one at issue in *Johnson*. Defendant, for now, "must undergo only an assessment." *Johnson*, 697 F.3d at 1251. Unlike in *Johnson*, though, Defendant had a history of treatment when the district court sentenced him. The district court thus had *some* insight into whether Defendant posed a risk of re-offending. Even so, the district court lacked the kind of "detailed information" that the district court in *T.M.* had. *Id.* There, the district court had access to treatment reports as recent as 2001—only a year before the district court imposed the conditions at issue. *T.M.*, 330 F.3d at 1241 n.5. Here, Defendant completed treatment sometime before 2002, so the district court lacked *recent* information regarding his risk of re-offending. Thus, Defendant's history of treatment mitigates—but does not altogether obviate—the need for an assessment.[1]

---

[1] Defendant also provided the district court with the results of a polygraph examination, which noted that he had been truthful in denying having had sexual contact with a minor since his release from supervision in 2002. But the district court was free to disregard such evidence at sentencing. *United States v. Givens*, 767 F.2d 574, 585 (9th Cir. 1985).

More importantly, Defendant was convicted of a crime that relates to his history of sexual misconduct. As the district court explained, Defendant's failure to register as a sex offender suggested that he might have an ongoing desire to engage in further sex offenses. The district court thus imposed the condition at issue not in response to Defendant's *27-year-old* conviction for rape but, rather, as a means of addressing Defendant's *recent* conviction for failure to register as a sex offender.

Of course, the crimes relate to one another. Defendant would not have been required to register as a sex offender had he never been convicted of a sex offense in the first place. But Congress, in enacting SORNA, clearly viewed a sex offender's failure to register as posing a risk to the public. *See* 34 U.S.C. § 20901 (establishing the sex offender registration system "to protect the public from sex offenders and offenders against children"). That is, SORNA exists, in part, to address the concern that, when a sex offender fails to register or to update his or her registry, the offender may have done so as part of an effort, conscious or not, to re-offend. *That* was the possibility that the district court sought to address when it required that Defendant undergo a sex offense-specific assessment. In that way, the conditions at issue do not rest *solely* on Defendant's dated conviction for rape. In fact, they relate *primarily* to the risks indicated by his recent failure to register.

---

Further, the polygraph test on which Defendant relied appears to have been limited to the single question whether Defendant had engaged in bare genital sexual contact with a minor since his release. Such a limited inquiry does little to remove the need for a more comprehensive understanding of Defendant's risk of re-offending, as the district court reasoned.

Defendant argues, for two reasons, that the district court's decision to impose the conditions runs counter to the policy statements of the United States Sentencing Commission. First, Defendant argues that the conditions are unreasonable because the Federal Sentencing Guidelines do not recommend an assessment or treatment for all defendants convicted of failure to register. That argument fails, though, because the Guidelines' recommended conditions are only advisory. *United States v. Williams*, 356 F.3d 1045, 1052 (9th Cir. 2004). District courts retain wide latitude to craft conditions of supervised release. *Id.* Second, Defendant argues that we can infer that the Sentencing Commission did not intend for SORNA violators to undergo assessments or treatment because the Commission did not categorize SORNA violations as "sex offenses"—offenses for which the Commission expressly recommends treatment as a condition of supervised release, U.S.S.G. § 5D1.3(d)(7). We decline to draw that conclusion here because nothing in the Guidelines suggests that an assessment or treatment is appropriate *only* when a defendant engages in physical sexual misconduct. Further, as we explained in *Bainbridge*, such "negative implication" arguments are "particularly inapplicable" in this context because district courts have broad discretion with respect to crafting conditions of supervised release. 746 F.3d at 948.

Because the conditions at issue are not particularly burdensome and because they relate to Defendant's crime of conviction, we conclude that the district court did not abuse its discretion.

**AFFIRMED.**