FILED
**United States Court of Appeals**
**Tenth Circuit**

**August 13, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee

v.

    No. 18-1220

MICHAEL LYLE BLAIR,

    Defendant - Appellant.
_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:17-CR-00079-CMA-1)**
_____

Kathleen Shen, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender with her on the brief) Office of the Federal Public Defender, Denver, Colorado, appearing for Defendant-Appellant.

Paul Farley, Assistant United States Attorney (Jason R. Dunn, United States Attorney with him on the brief) Office of the United States Attorney, Denver, Colorado, appearing for Plaintiff-Appellee.
_____

Before **BACHARACH**, **BALDOCK**, and **EBEL**, Circuit Judges.
_____

**EBEL**, Circuit Judge.
_____

    This case requires us to decide whether a special condition of supervised

release that states that the "defendant's use of computers and Internet access devices

must be limited to those the defendant requests to use, and which the probation officer authorizes," R. Vol. I at 97, involves a "greater deprivation of liberty than is reasonably necessary for" deterring criminal activity, protecting the public, and promoting a defendant's rehabilitation in contravention of 18 U.S.C. §§ 3583(d)(2) and 3553(a)(2)(B)-(D). We conclude that this special condition violates these provisions because it allows the probation office to completely ban the defendant's use of the Internet by failing to place any restraints on a probation officer's ability to restrict a defendant's Internet access. Thus, the special condition is impermissibly broad, and the district court abused its discretion by imposing it. We vacate that challenged special condition and remand to the district court to reformulate it to conform with the dictates of this opinion. Blair also challenges the length of his sentence as substantively unreasonable, but we disagree with that challenge and accordingly we otherwise affirm his sentence.

## I. BACKGROUND

In 2013, the police searched Michael Blair's home as part of an investigation that is unrelated to this case. During the search, the police discovered a hard drive belonging to Blair with more than 700,000 images of child pornography on it. Ultimately, Blair was charged with and plead guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).

Blair's plea agreement anticipated that the district court would calculate his total offense level as twenty-eight, which would have resulted in an advisory guideline sentencing range of 78-97 months' imprisonment. Blair waived his right to

2

appeal any sentence within that guideline range. The probation office prepared a Presentence Investigation Report (PSR), which calculated Blair's total offense level as thirty-three. The five levels not anticipated by the plea agreement were added because, after Blair's plea was entered, the government received statements from Blair's younger sister and his son alleging that Blair had sexually abused them when they were minors. Blair denied those allegations, but the district court heard testimony from both individuals and found them "very credible" and accordingly applied the five-level enhancement for a "pattern of activity involving the sexual abuse or exploitation of a minor." U.S.S.G. § 2G2.2(b)(5).

According to the sentencing guidelines, Blair's total offense level of thirty-three and his category I criminal history resulted in an advisory guidelines sentencing range of between 135-168 months' imprisonment. However, the maximum sentence Blair could receive under the statute was 120 months, see 18 U.S.C.A. § 2252A(b)(2). Blair moved for a downward departure based on mitigating circumstances, including his age (63), physical health, mental illness, caretaker responsibilities for his wife who is cognitively deficient, history of suffering abuse as a child, and history of military service. The district court denied the motion and imposed the statutory maximum sentence of ten years' imprisonment plus seven years of supervised release.

After calculating Blair's sentence, the district court imposed, among several others, the following special conditions of supervised release (Blair objects only to the underlined sentence):

3

6. The defendant's use of computers and Internet access devices must be limited to those the defendant requests to use, and which the probation officer authorizes. The defendant must submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions.

7. You must allow the probation officer to install software/hardware designed to monitor computer activities on any computer you are authorized by the probation officer to use. The software may record any and all activity on the computer, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations. A notice will be placed on the computer at the time of installation to warn others of the existence of the monitoring software on the computer. You must not attempt to remove, tamper with, reverse engineer, or in any way circumvent the software/hardware.

R. Vol. I at 97.

Blair now appeals.[1] First, Blair argues that his ten-year sentence is substantively unreasonable. We disagree and affirm Blair's sentence. Second, Blair argues that the special condition of supervised release underlined above is more restrictive "than is reasonably necessary" in violation of 18 U.S.C. § 3583(d)(2). We agree with that contention, vacate the special condition, and remand to the district court with instructions to reformulate it to accord with this opinion.

---

[1] Although Blair signed a plea agreement with an appeal waiver, the government concedes that "this appeal falls outside the scope of the waiver" because Blair received a sentence based on an offense level higher than that anticipated by the agreement. Aple. Br. at 8 n.5.

## II.    DISCUSSION

**A. Prison Sentence Imposed was Substantively Reasonable**

First, Blair argues that the ten-year sentence the district court imposed is substantively unreasonable. We review substantive reasonableness challenges using an abuse of discretion standard to determine "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." United States v. Martinez, 610 F.3d 1216, 1227 (10th Cir. 2010) (quotation and citation omitted). We do not reweigh the sentencing factors but instead ask whether the sentence fell within the range of "rationally available choices that facts and the law at issue can fairly support." Id. (internal quotation marks omitted). We reverse only when the district court "renders a judgment that is arbitrary, capricious, whimsical or manifestly unreasonable." Id. Furthermore, we presume that a sentence within the properly calculated guidelines range is reasonable. United States v. Franklin, 785 F.3d 1365, 1370 (10th Cir. 2015).

Applying the sentencing guidelines, the district court calculated Blair's total offense level as thirty-three and his criminal history as category I, resulting in an advisory-guidelines sentencing range of between 135-168 months' imprisonment. However, the district court sentenced Blair to 120 months' imprisonment, an amount below that range, because by statute his offense was punishable by not more than ten years in prison, see 18 U.S.C.A. § 2252A(b)(2), and U.S.S.G. 5G1.1(a) provides that where the "statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the

5

guideline sentence." When a sentence is imposed in this way, it is considered "within" the applicable guideline range and may be presumed reasonable. United States v. Sangiovanni, 660 F. App'x 651, 657 (10th Cir. 2016).

As an initial matter, Blair argues that, even though his sentence falls within the applicable range calculated under the relevant guideline (§ 2G2.2), it is unreasonably long because section 2G2.2 is "inherently flawed" and lacks an empirical basis. Aplt. Br. at 22. We have heard and rejected this argument before. Franklin, 785 F.3d at 1370. "[W]e apply the presumption of reasonableness to sentences based on 2G2.2, regardless of its alleged lack of empirical support." Id. Therefore, we apply that presumption to Blair's remaining arguments.

Blair asserts that the district court failed to give sufficient weight to three aspects of his personal history, his (1) difficult childhood, (2) poor mental and physical health, and (3) military service. We disagree. Blair asserts that the district court's finding that he "didn't have an abusive childhood" was clearly erroneous because he presented evidence that his father was abusive and an alcoholic. Aplt. Br. at 21 n.10. However, as the district court pointed out, the PSR supported its finding. R. Vol. VI at 255. The PSR stated that, although Blair's father was abusive, Blair "disavowed being the victim of any sexual abuse" and "reported a positive relationship with both parents, and with his sister Betsy." R. Vol. II.A at 18. As for Blair's concerns about his health, the district court explained that Blair's "physical and medical conditions do not constitute an extraordinary physical impairment" because Blair's "condition is not so unusual as to distinguish him from any other

6

defendants over the age of 60" and the "Bureau of Prisons, especially with the aging prison population, has had to become adept in treating all types of illness and disabled individuals." R. Vol. VI at 251. Finally, although the district court did not mention Blair's military service specifically, it gave other reasons for its sentence, including its opinion that ten years was a just punishment to reflect the seriousness of the offense, which affected many victims who will "endure unimaginable physical and emotional pain for the entire rest of their lives," including Blair's sister and son and the thousands of people depicted in the images that he downloaded. R. Vol. VI at 295. Blair does not argue that the district court committed procedural error by failing to address certain of his arguments, and none of the personal characteristics he highlights on appeal are sufficient to rebut the presumption of reasonableness that we must apply to his within-guidelines sentence. The district court's decision to impose a sentence of ten years' imprisonment appears reasonable to us in light of all the circumstances of the case. Accordingly, we affirm Blair's prison sentence.

## B. Special Condition Violated 18 U.S.C. § 3583(d)(2)

Blair also challenges a special condition of supervised release imposed by the district court banning his use of computers and Internet devices in the absence of permission from his parole officer. "We review the district court's decision to impose special conditions of supervised release for abuse of discretion." United States v. Wayne, 591 F.3d 1326, 1331 (10th Cir. 2010). Although district courts have broad discretion to prescribe conditions on supervised release, United States v. Hanrahan, 508 F.3d 962, 970 (10th Cir. 2007), that discretion is limited by 18 U.S.C.

7

§ 3583(d) and 18 U.S.C. § 3553(a). Read in conjunction with one another, those statutory provisions provide in relevant part that a trial court may order special conditions of supervised release so long as

(1) the conditions are reasonably related to "the nature and circumstances of the offense and the history and characteristics of the defendant," the need "to afford adequate deterrence to criminal conduct," the need "to protect the public from further crimes of the defendant," and the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," see id. §§ 3583(d)(1), 3553(a)(1), and 3553(a)(2)(B)-(D); and

(2) the conditions involve "no greater deprivation of liberty than is reasonably necessary for" deterring criminal activity, protecting the public, and promoting a defendant's rehabilitation, see id. §§ 3583(d)(2), 3553(a)(2)(B)-(D).

Here, the district court imposed a special condition of supervised release that included the following restriction:

The defendant's use of computers and Internet access devices must be limited to those the defendant requests to use, and which the probation officer authorizes.

R. Vol. I at 97. Blair argues that this special condition is not reasonably related to the goals of supervised release, and, even if it is so related, it involves a greater deprivation of liberty than is reasonably necessary to achieve those goals. Without deciding Blair's first argument, we agree with his second argument, that the district court's special condition involves a greater deprivation of liberty than is reasonably necessary to achieve the goals of supervised release in violation of section 3583(d)(2). It is clear from our published cases that a special condition of release that gives the probation office discretion to ban completely a defendant's use of the

8

Internet, as this condition does, violates that section. Because the special condition in this case allows for such a ban, we vacate the special condition as an abuse of discretion.

Three published cases guide our analysis. First, in United States v. White, we overturned a special condition that prohibited the defendant from "possess[ing] a computer with Internet access throughout his period of supervised release." 244 F.3d 1199, 1201 (10th Cir. 2001). We found the condition simultaneously too narrow and overly broad. Id. at 1205. It was too narrow because it did not prohibit White from browsing sexually explicit material on something other than a personal computer, such as on a computer in a library or cybercafe. Id. at 1205-06. It was too broad because it prohibited White from using the Internet for benign tasks like checking the weather or reading the news. Id. at 1206. Due to those failings, we held that the condition was unreasonable under the sentencing statutes.

In United States v. Walser, with White as the only case in the background, we held that it did not amount to plain error for the district court to impose "a special condition of supervised release barring [the defendant's] use of or access to the Internet without the prior permission of the United States Probation officer" for a three-year term. 275 F.3d 981, 987 (10th Cir. 2001). Despite upholding the permission-first condition, we cautioned that, but for the plain error standard of review, we may have gone the other way. Id. at 988. We held,

> It may nevertheless be questionable whether the condition imposes "no greater deprivation of liberty than is reasonably necessary" to meet the goals referred to in 18 U.S.C. § 3583(d), since the vagueness of the

9

> special condition leaves open the possibility that the probation office might unreasonably prevent Mr. Walser from accessing one of the central means of information-gathering and communication in our culture today. We are not persuaded this concern rises to the level necessary to clear the extremely high hurdle set by the plain error standard, however, and we decline to overturn the condition imposed by the district court.

Id. We accordingly determined that the district court did not plainly err by imposing the condition at issue in Walser.

Then, in United States v. Ullmann, we reviewed for an abuse of discretion a condition of release that allowed the defendant to use computers and the Internet so long as he "abide[d] the policies of the United States Probation Officer's Computer and Internet Monitoring Program which include[d] restrictions and/or prohibitions related to: computer and Internet usage." 788 F.3d 1260, 1262 (10th Cir. 2015). Focusing on the phrase "restrictions and/or prohibitions," we held that "this language, standing alone, would impermissibly impose a greater deprivation of liberty than reasonably necessary because it suggests the Probation Office may completely ban a means of communication that has become a necessary component of modern life." Id. at 1261. We reiterated our holding in White that any "ambiguously-worded condition would impose a greater deprivation of liberty than is reasonably necessary if it were read to completely prohibit a defendant from accessing the Internet." Id. at 1263 (citing White, 244 F.3d at 1206). However, we upheld the restriction in Ullmann as lawful because the district court orally modified the condition by clarifying at the sentencing hearing that the "restrictions and/or prohibitions" language only restricted—and did not prohibit—Ullmann's use of the

10

Internet. Id. at 1262. Specifically, the district court explained that Ullmann "ha[d] not been prohibited from using his computer, cell phone or any other electronic appliance with [I]nternet access" and furthermore that the special condition applied to only certain Internet-capable devices, which we interpreted to exclude, for example, a "gaming system, that lacks Internet access." Id. at 1264 (emphasis added).[2]

In addition to relying on those oral modifications, we were persuaded in Ullman that imposing that special condition was not an abuse of discretion because we were told that the probation office intended to impose "the standard sex offender supervision condition" under its new Computer and Internet Monitoring Program, and the probation office's manual explained that, under that system, "[o]ffenders are permitted to use a computer and access the Internet, with the clear understanding that their computer activities are being monitored." Id. at 1262, 1264. Thus, we upheld the special condition in Ullmann because the modified version of that condition reasonably restricted but did not prohibit the defendant's use of the Internet.

The special condition that the district court imposed in this case, however, both on its face and when read in light of the district court's statements at sentencing, completely bans Blair's use of the Internet and offline computers, unless and until the probation office makes some future exceptions to the ban, which it has no obligation

---

[2] Although a district court's oral statements may be relied on to clarify an ambiguous condition of release when those statements are clear, as they were in Ullmann, it is clearly preferable to have all terms and conditions set forth in the written conditions.

11

to entertain nor to grant. As a result, the condition involves a "greater deprivation of liberty than is reasonably necessary" in contravention of 18 U.S.C. § 3583(d)(2). In Ullmann, we described the Internet as "a means of communication that has become a necessary component of modern life." Id. at 1261. Four years later, the role that computers and the Internet play in our everyday lives has become even more pronounced, and we expect that trend to continue. Thus, what was a reasonable restriction on Internet-use in our earlier cases may be different from what is reasonable today. We must read our prior cases in light of the evolution of the Internet and the public's dependency on it. As we acknowledged in Ullmann, in all but the most extreme cases, a special condition of supervised release that absolutely prohibits the use of the Internet will unreasonably impede a defendant's liberty in violation of section 3583. The condition in this case is impermissible for exactly that reason.

The special condition of supervised release that the district court imposed here reads:

> The defendant's use of computers and Internet access devices must be limited to those the defendant requests to use, and which the probation officer authorizes.

R. Vol. I at 97. Both parties agree that that restriction is intended to apply to Blair's use of both offline computers and Internet-connected devices that have the ability to browse the Internet, including computers.[3] However, the parties disagree about how

---

[3] Blair also argues that the district court's special condition prevents him from using Internet-connected devices that have no Internet-browsing capability, like "credit-card

12

broadly the condition's prohibitions sweep and whether the breadth of its scope contravenes sections 3553 and 3583. We agree with Blair that this special condition is overbroad.

Blair argues that, on its face, the special condition would prohibit his use of a computer for benign activities, such as writing a novel or checking the weather, without first obtaining permission from his probation officer ("defendant's use of computers . . . must be limited to those the defendant requests to use"). We agree. The special condition is written in the negative. Unlike the condition that we upheld in Ullman, which allowed the defendant to use computers and the Internet so long as he "abide[d] the policies of the United States Probation Officer's Computer and Internet Monitoring Program which include[d] restrictions . . . related to: computer and Internet usage," 788 F.3d at 1262, the condition at issue here prevents Blair from using computers and Internet access devices for any reason unless the probation office, in its unfettered discretion, chooses to lift the ban. Thus, under our holdings in White and Ullmann, this condition imposes a "greater deprivation of liberty than is reasonably necessary" in contravention of 18 U.S.C. § 3583(d)(2) because it allows the probation office to "completely ban a means of communication that has become a necessary component of modern life." Id. at 1261.

---

readers, self-service check-in kiosks at the airport, and iRobot vacuum cleaners." Aplt. Br. at 14. That interpretation is not supported by either the plain language of the condition or the district court's oral pronouncements at sentencing, and therefore we reject it.

The government counters that there is nothing in the record suggesting the district court intended the condition to reach so far. We observe, however, that nothing in the record <u>limits</u> the breadth of the plain language of the condition, and, if anything, the record suggests that the district court intended for the condition to operate as a complete ban unless the probation office decides otherwise. We have held that "an oral pronouncement of sentence from the bench controls over written language," <u>Ullmann</u>, 788 F.3d at 1264 (brackets removed) (citation omitted). In response to Blair's vagueness challenge, the district court reiterated that the probation office has complete discretion to decide if Blair may use computers and Internet access devices for any reason. The district court stated:

> The defendant argues that this objection, or this restriction, rather, on his computer is too vague and overbroad.
>
> The defendant committed this offense via the use of the computer or other electronic devices, combined with the use of the Internet. Given this fact, his use the computers [sic] and the internet do need to be closely monitored and supervised to reduce the risk of re-offending and to increase community safety.
>
> The portion of the disputed condition does allow for the defendant to request to use computers and internet access while under supervision, and allows for his future probation officer to authorize that usage if deemed safe and appropriate given the particular circumstances presented by the defendant.
>
> The Court finds it appropriate that the condition involves no greater deprivation of liberty than reasonably necessary based on the facts and circumstances of this offense and the characteristics of this defendant.
>
> The Court finds it appropriate that approval of the defendant's access to the internet should be addressed on a case-by-case basis with the defendant's probation office during his further term of supervised release. Therefore, that objection is overruled.

14

R. Vol. VI at 244–45. The district court explained that the special condition "allows for [Blair's] future probation officer to authorize" his usage of computers and the Internet "if deemed safe and appropriate." Id. at 245. However, the district court did not, in either its written conditions or oral clarifications, require the probation office to authorize Blair to use computers or the Internet for any purpose, giving it the authority to ban all uses.

The government also argues that the district court's condition is ambiguous and that, as a result, we should construe it "narrowly so as to avoid affecting [a] significant liberty interest." Aple. Br. at 14 (quoting United States v. Bear, 769 F.3d 1221, 1230 (10th Cir. 2014)). In Bear, we held that a condition of supervised release requiring the defendant to "submit to a sex offender mental health assessment and a program of sex offender mental health treatment, as directed by the U.S. Probation Officer, until such time as the defendant is released from the program by the probation officer" did not deprive the defendant of a liberty interest because we construed that broad condition to "reflect the probation officer's representation to the district court that the results of the assessment would dictate the scope of any treatment plan" in a reasonable way rather than reflect an intention by the district court to allow the probation office to impose whatever treatment plan it wanted, including an excessive plan not appropriate for that particular defendant. Id. at 1230-31. However, Bear is unpersuasive for two reasons. First, the special condition before us is not ambiguous. Under its plain language, at the moment Blair is released

15

from prison, he is not allowed to use computers or the Internet for any reason. Unless and until the probation office decides to allow Blair to use the Internet—and it is not required to do so—the special condition operates exactly like the condition in White that we invalidated: it prohibits Blair's Internet-use completely. Second, even if the special condition is ambiguous, nothing in our record—unlike that in Bear— suggests that the probation office will allow Blair any reasonable use of the Internet. Like special condition number six (the Internet restriction before us), the surrounding special conditions reflect the district court's intent to give the probation office the discretion to maintain the status quo established by condition six and prevent Blair from using computers and the Internet for any reason for all seven years of his supervised release. Special condition number seven states that Blair "must allow the probation officer to install software/hardware designed to monitor computer activities on any computer [he is] <u>authorized by the probation officer to use</u>," allowing for the possibility that Blair will not be authorized to use any computers. R. Vol. I at 97. In short, we cannot construe the condition in this case as providing authorization from the <u>district court</u> for Blair to use the Internet for benign purposes because the condition does not do so. It permits, but does not require, the probation office to allow such use, but there is no court-ordered right for Blair to use any computer or the Internet for any reason.

In a similar argument, the government urges us to presume even in the absence of limiting language that the probation officer charged with monitoring Blair will enforce the district court's special condition in a reasonable way. This court adopted

a reasonableness presumption in <u>United States v. Vinson</u>, 147 F. App'x 763, 774 (10th Cir. 2005) (unpublished), an unpublished and nonbinding case, which involved a special condition that prevented the defendant from using "any Internet service without first receiving written permission from his probation officer." <u>Id.</u> However, the reasonableness-presumption approach taken in <u>Vinson</u> ignores the affirmative limits of section 3583(d) that district courts must follow when they craft special conditions of supervised release not enumerated by the statute. Section 3583(d)(2) expressly states that <u>district courts</u> may order special conditions of release beyond those enumerated in the statute <u>only if the conditions</u> involve no greater deprivation of liberty than is reasonably necessary to accomplish the goals of deterring criminal activity, protecting the public, and promoting a defendant's rehabilitation. Imposing a special condition that bans all use of computers and/or the Internet except for uses to be determined later by the probation officer, in his or her unfettered discretion, does not comply with the requirements of section 3583(d)(2) because it does not ensure that the defendant will be allowed <u>any</u> reasonable use of computers and the Internet.[4] Nothing about this case suggests that a complete ban on Blair's use of the Internet is necessary to achieve the goals of supervised release. In any event, because the ubiquitous use of the Internet has changed considerably in the fourteen

---

[4] Furthermore, our court in <u>Vinson</u> concluded that the permission-first condition in that case was acceptable only if implemented to intrude minimally on Vinson's liberty, for example, through the use of website filtering software. <u>Id.</u> We have received no assurance that website filtering software will be used here.

17

years since <u>Vinson</u>, and because <u>Vinson</u> is not binding authority on us, we think it is appropriate to take a fresh look here at supervised release Internet restrictions.

The government lastly suggests that the proper time for Blair to raise his desire to use computers and the Internet for harmless purposes is down the road when he meets with his probation officer and discovers how the probation office intends to enforce the condition. The government argues that, if the probation office enforces the special condition in an unreasonable way, Blair can then move the district court to modify the condition. However, for the reasons already mentioned, the time to bring the condition into compliance with sections 3553 and 3583 is now on direct appeal because the requirements in those sections directly govern the <u>district court's</u> <u>obligations</u> in imposing supervised release conditions. Additionally, the government's wait-and-see suggestion places an unfair burden on Blair. In order to demonstrate the unfairness of the probation officer's enforcement of the condition to the district court later on, Blair may be required to test the limits of the condition and risk violating it, which could result in his receiving additional prison time.[5] There are no cases that have been called to our attention supporting the idea that a defendant must prove that an overbroad condition of supervised release will be

---

[5] For example, the defendant in <u>United States v. Holena</u>, 906 F.3d 288, 290 (3d Cir. 2018), was required to serve two separate additional nine-month terms of imprisonment for violating a similar condition of supervised release by "updat[ing] social-media profiles," "answer[ing] emails," and "log[ging] into Facebook" without the approval of his probation officer.

enforced unreasonably in order to obtain relief from it, and we decline to adopt that position in this case.

On remand, the district court must amend the challenged special condition of supervised release to bring it into compliance with the demands of sections 3553 and 3583. Those sections require special conditions of release that neither absolutely prohibit the defendant's access to computers or the Internet nor permit the probation office to achieve that result by a refusing affirmatively to allow any Internet access. The probation office is limited to imposing only those restrictions that are reasonably calculated to prevent the defendant from using a computer or the Internet to access, store, produce, or send child pornography in any form; to provide necessary restrictions to facilitate a defendant's correctional treatment so that he may be rehabilitated; and to protect the public from any further crimes of the defendant.

We share the abhorrence expressed by the dissent regarding Blair's conduct, and as noted previously we have no difficulty affirming the length of incarceration imposed by the district court. We also have no doubt that upon remand the district court will be able to fashion a new special condition of supervised release that allows the probation office to impose appropriate restrictions on Blair's use of computers and the Internet sufficient to prevent him from engaging in improper behavior without involving a greater deprivation of his liberty than is reasonably necessary to achieve the goals of 3553(a)(2)(B)-(D). Our holding is only that the district court as the sentencing court is compelled by sections 3583(d) and 3553(a) to provide meaningful guidance in its special conditions of release to the probation officers that

19

will enforce those conditions to prevent them from denying Blair <u>all</u> access to computers and the Internet.[6]

### III.    CONCLUSION

For the foregoing reasons, we affirm Blair's sentence as substantively reasonable, but we vacate the challenged special condition of supervised release and remand this case to district court to reformulate it to accord with this opinion.

---

[6] No one has argued in this case nor did the district court find that extraordinary circumstances exist to justify such a blanket or total ban.

18-1220, *United States v. Blair*

**BALDOCK**, Circuit Judge, dissenting in part, concurring only in Part II-A:

The Court today holds the special condition—stating Defendant's "use of computers and Internet access devices must be limited to those the defendant requests to use, and which the probation officer authorizes"—imposes a greater deprivation of liberty than reasonably necessary in violation of 18 U.S.C. § 3583(d)(2) because "it allows the probation office to completely ban the defendant's use of the Internet" or it in fact "absolutely prohibits the use of the Internet." Ct. Op. at 2, 12. Whether a condition could possibly be read as allowing for the extreme hypothetical possibility that a defendant would be prevented from using a computer or the Internet entirely, however, is not the appropriate inquiry under *United States v. Ullman*, 788 F.3d 1260, 1261 (10th Cir. 2015). And the condition at issue here and its surrounding text, not to mention the district court's oral pronouncement and binding precedent, make clear the condition is not an absolute prohibition of computer or Internet use. Thus, the district court did not abuse its broad discretion in imposing the condition. I would affirm.[1]

---

[1] Along with Defendant's § 3583(d)(2) argument, Defendant argues the condition is not "reasonably related to deterring and protecting the public from defendant's crimes," presumably in violation of § 3583(d)(1). Op. Br. at 12. He states it is "unmoored from the conduct that it is ostensibly intended to prevent—*i.e.*, the download and possession of child pornography." *Id.* This argument is preposterous. The condition restricting Defendant's access to computers and Internet access devices could not be more closely moored to the download and possession of child pornography, a crime Defendant committed solely with a computer and the Internet. While the Court does not address this § 3583(d)(1) argument, the argument easily fails, and the only real issue before this Court is the § 3583(d)(2) issue.

I.

The Court reaches its holding that the condition is impermissible because "it allows the probation office to completely ban the defendant's use of the Internet" based on its reading of *Ullman*. Ct. Op. at 2. In *Ullman*, we addressed a very different condition that imposed "restrictions and/or *prohibitions* related to: computer and Internet use." 788 F.3d at 1261 (emphasis added). We held this condition, standing alone, would involve a greater deprivation of liberty than reasonably necessary in violation of § 3583(d)(2). *Id.* Absent extraordinary circumstances not present in *Ullman*, a complete "prohibition" was impermissible. At a hearing, however, the district court clarified that the condition "*only restricted*—and *did not prohibit*—use of various Internet-capable devices." *Id.* at 1262 (emphasis added). Since an "oral pronouncement of sentence from the bench controls over written language," this oral clarification made the condition lawful. *Id.* at 1264 (citing *United States v. Barwig*, 568 F.3d 852, 855 (10th Cir. 2009)). The holding of *Ullman* is simple: in general, a court may impose a condition that *restricts* but not *prohibits* computer and Internet use.[2]

The Court takes it a step further though and construes *Ullman* to hold that if a condition "allows the probation office to completely ban the defendant's use of the Internet," then the condition imposes a greater liberty deprivation than is reasonably

---

[2] The Court seems to agree with this much. Ct. Op. at 11 ("[W]e upheld the special condition in Ullman because the modified version of that condition reasonably restricted but did not prohibit the defendant's use of the Internet.").

necessary in violation of 18 U.S.C. § 3583(d)(2). Ct. Op. at 2. In other words, if the condition *can* be read as a complete prohibition, we *must* read it that way. But at no point in *Ullman* did we set forth a new rule that any time we can possibly read a special condition as imposing a complete prohibition of computer and Internet use in violation of § 3583(d)(2), we must do so. To the contrary, we acknowledged we must "constru[e] [the] condition so as to render it legally sound." *Ullman*, 788 F.3d at 1264 (citing *United States v. Mike*, 632 F.3d 686, 696 (10th Cir. 2011)). *Ullman* indeed stated that the condition, without the oral modification, would be impermissible because "it suggests the Probation Office may completely ban a means of communication that has become a necessary component of modern life," but again, it did so because *the condition explicitly imposed "prohibitions." Id.* at 1261. The word that could have been construed to "prohibit *any* Internet or computer use" was "prohibitions"—a word absent in the instant condition. *Id.* at 1263. *Ullman* also stated "an ambiguously-worded condition would impose a greater deprivation of liberty than is reasonably necessary *if* it were read to completely prohibit a defendant from accessing the Internet." *Id.* at 1263 (emphasis added). Contrary to the Court's holding, what does not follow from this sentence is: "and we must read it to completely prohibit a defendant from accessing the Internet if we can."[3]

---

[3] The Court seems to suggest the probation office's manual was a major factor in our reasoning in *Ullman*. *Ullman*, however, barely mentioned the manual in its analysis. Instead, *Ullman* made clear that the district court's oral pronouncement that the condition was not a prohibition was the *sole* reason the condition did not violate § 3583. 788 F.3d at 1264 ("We conclude that the modified condition is lawful *only* because of the district court's oral statement." (emphasis added)).

Far more importantly, the Court's interpretation of *Ullman* flatly contradicts our precedent in *United States v. Bear*, 769 F.3d 1221 (10th Cir. 2014). And, of course, "we must endeavor to interpret our cases in a manner that permits them to coexist harmoniously . . . with each other." *United States v. Hansen*, __ F.3d __, __, 2019 WL 3071421, *10 (10th Cir. 2019) (citing *Carter v. Bigelow*, 787 F.3d 1269, 1280 (10th Cir. 2015)). *Bear* held "[w]here a broad condition of supervised release is ambiguous and could be read as restricting a significant liberty interest, we construe the condition narrowly so as to avoid affecting that significant liberty interest." *Bear*, 769 F.3d at 1230 (citing *Mike*, 632 F.3d at 696). *Ullman* itself reiterated this principle, stating we must "constru[e] [the] condition so as to render it legally sound." *Ullman*, 788 F.3d at 1264 (citing *Mike*, 632 F.3d at 696). The Court today takes the opposite approach, ignoring narrow constructions of the condition and instead construing the condition in a way that ensures an unreasonable restriction of a liberty interest.

The Court's attempts to explain why *Bear* does not apply to this case fall flat. First, the Court states the condition is not ambiguous. The fact that the Court reads the condition as having open-ended language that gives the probation office "unfettered discretion" indicates, however, that the condition is ambiguous and should be construed "in a manner that does not make [it] infirm." *See Mike*, 632 F.3d at 696. The Court also attempts to justify its failure to apply this narrow-construction principle by stating *Bear* only applied this principle because the probation office assured the district court it would apply the condition "in a reasonable way." Ct. Op. at 15. The reader might be surprised to turn to *Bear* and find *Bear* says nothing about applying the condition "in a reasonable way."

4

Further, we had no indication in *Mike* about how a condition would be applied, yet we still construed the condition in a way that did not make the condition infirm. *Mike*, 632 F.3d at 696. Especially in light of our requirement "to interpret our cases in a manner that permit them to coexist harmoniously," the Court cannot justify its forced interpretation of *Ullman* that directly conflicts with our requirement to ask whether the instant condition can be construed "narrowly so as to avoid affecting [a] significant liberty interest."

## II.

The Court today also reads the condition at issue as one that is impermissible under *Ullman* because it "absolutely prohibits the use of the Internet."[4] Ct. Op. at 12. This contention, too, is plainly contradicted by our precedent. In *Walser*, we explicitly stated a condition that barred the defendant's "use of or access to the Internet without the prior permission of the United States Probation Officer" did "not completely ban[] [the defendant] from using the Internet" because he only had to "obtain prior permission from the probation office." *United States v. Walser*, 275 F.3d 981, 987–88 (10th Cir. 2001). *Ullman* reiterated this by stating the *Walser* condition—identical in all relevant aspects to the one we face today—"only limited, but did not completely prohibit, Internet use." *Ullman*, 788 F.3d at 1263. What does the Court have to say about these binding precedents that an almost identical condition was *not a complete ban* and *did not completely prohibit*? Not a single word.

---

[4] The Court and I agree that, as *Ullman* plainly stated, a "blanket ban" on a defendant's computer and Internet use is impermissible, unless "extraordinary circumstances" justify the absolute prohibition. 788 F.3d at 1261.

If binding precedent addressing the exact issue is not enough to demonstrate the condition is not a complete ban, the Court's holding is plainly contradicted by the very condition itself and its surrounding text. The condition cannot be an absolute prohibition on Defendant's use of computer and Internet access devices when it allows Defendant to seek authorization of such use. An "absolute prohibition" of computer and Internet use would, by definition, be one that does not allow for the possibility of computer and Internet use. Further, the special condition following the condition limiting computer and Internet use makes clear that the condition at issue is not a complete ban. As the Court points out, the next condition requires the defendant to:

> allow the probation officer to install software/hardware designed to monitor computer activities on any computer you are authorized by the probation officer to use. The software may record any and all activity on the computer, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations. A notice will be placed on the computer at the time of installation to warn others of the existence of the monitoring software on the computer. You must not attempt to remove, tamper with, reverse engineer, or in any way circumvent the software/hardware.

R. Vol. I, 97. Such a detailed condition about what must occur once a probation officer authorizes computer use would hardly be necessary if the prior condition was a complete ban and shows, contrary to the Court's assertion, the district court certainly did not have the "intent to . . . prevent Blair from using computers and the Internet for any reason for all seven years of his supervised release."[5] Ct. Op. at 16.

---

[5] Imputing such an extreme intent to the district court is also difficult—if not impossible—to do in light of the district court's statements that Defendant's "use" of the computers and the Internet need to be "closely monitored and supervised" and that

6

Even more damaging to Defendant's case, in sharp contrast to the condition at issue in *Ullman*, the instant condition does not impose any "prohibitions." Instead, the condition requires that "[t]he defendant's use of computers and Internet access devices must be *limited* to those the defendant requests to use, and which the probation officer authorizes." *Id.* (emphasis added). Imposing *limitations* on the defendant's use of computers and Internet access devices is no different than imposing *restrictions* on a defendant's computer and Internet use.[6] Yet, even though we held the latter was permissible in *Ullman*, the Court today holds the former is impermissible.

The district court did not impose a condition that "absolutely prohibits the use of the Internet" but rather imposed a condition that limited (i.e., restricted) Defendant's use of computers and Internet access devices—the precise thing we held was permissible in *Ullman*. That should be the end of this issue. But even if one ignores *Walser* and *Ullman* and somehow reads the written condition as a complete prohibition, Defendant still cannot prevail on his challenge of the condition. That is because the district court orally clarified and guided the probation office to authorize Defendant's use "if deemed safe and appropriate given the particular circumstances presented by the defendant." R. Vol. VI, 245. Recall, an "oral pronouncement of sentence from the bench controls over written language." *Ullman*, 788 F.3d at 1264. This clarification does two things. First, it cabins

---

"approval of the defendant's access to the internet should be addressed on a case-by-case basis with the defendant's probation office . . . ." R. Vol VI, 244–45.

[6] *Limitation*, Black's Law Dictionary (11th ed. 2019) (defining a "limitation" as a "restriction"); *Restriction*, Black's Law Dictionary (11th ed. 2019) (defining a "restriction" as a "limitation").

the probation officer's discretion by guided the officer to authorize use "if safe and appropriate." Second, it shows the district court's clear intent to allow uses of the computer and Internet that are safe and appropriate. The Court brushes this important "safe and appropriate" instruction aside because the oral clarification did not include a statement requiring "the probation office to authorize Blair to use computers or the Internet for any purpose." Ct. Op. at 15. But this clarification is far more specific and meaningful than the district court's clarification in *Ullman* that the condition was not a prohibition. I do not see how a more specific clarification than the one in *Ullman* that rendered the condition permissible there fails to do the same here.

Additionally, this Court may presume the probation office will enforce the special condition in a reasonable manner. *United States v. Vinson*, 147 F. App'x 763, 774–75 (10th Cir. 2005) (unpublished); *see also United States v. Miller*, 665 F.3d 114, 133–34 (5th Cir. 2011); *United States v. Love*, 593 F.3d 1, 12 (D.C. Cir. 2010). I recognize that *Vinson* is not binding on this Court, but I find the reasoning for adopting the reasonableness presumption persuasive. While the Court does not adopt this presumption today, I would do so because such a presumption accurately reflects the reality that the probation officers, who are far more intimately involved with Defendant's day-to-day life, know what the reasonable, safe, and appropriate uses of computers and the Internet are for this particular defendant and can adjust as technology changes. *See Love*, 593 F.3d at 12.

## III.

One further comment. The Court states "[n]othing about this case suggests that a complete ban on Blair's use of the Internet is necessary to achieve the goals of supervised

8

release." Ct. Op. at 17. "*Nothing*?" Defendant has a history of sex-related crimes that spans decades, dating back to his childhood. Defendant's sister testified that, when Defendant was fifteen and she was ten, Defendant attempted to rape her. Their father intervened, luckily, before the attempt was successful. According to Defendant's son, this was not an isolated incident of sexual abuse and continued into years later when Defendant had children of his own. Defendant's son testified that Defendant started grooming him while he was in third grade and eventually engaged in oral sex ten to fifteen times with him over the next couple years. During these assaults in Defendant's bedroom, a computer screen "constantly displayed pornography." R. Vol. III, 82. The district court found the testimony of both Defendant's sister and son "to be very credible." R. Vol. VI, 240. Fast-forwarding to 2014, Defendant pled guilty to felony pimping based on his participation in a prostitution operation in which he transported women from airports to massage parlors for prostitution.

And, of course, the latest known incident is Defendant's instant conviction for possessing over *700,000* images of child pornography—so much child pornography that it had to be sorted into folders, which bore names such as "Hardcore Childporn-Pthc-Kinderporno" and "Pthc folders."[7] R. Vol. II, 7. On this same hard drive, Defendant also kept "hundreds of pages of text stories describing the abduction and/or the sexual abuse of

---

[7] According to the PSR, "PTHC stands for 'Pre-Teen Hardcore.' In the world of child pornography collectors, this term indicates that the child pornography depicts a pre-pubescent minor engaged in sexual intercourse with one or more other adults or minors." R. Vol. II, 7.

children." *Id.* at 7. A search of Defendant's digital devices additionally revealed he possessed a "rape encyclopedia" and a "rape game," which is "some form of game wherein a person chooses scenarios to make up the circumstances of a rape." *Id.* at 11. Defendant has shown no sense of understanding the gravity of his crimes or the impact on his victims—the most vulnerable in our society who we can only hope will not have to internally deal with the trauma this man inflicted upon them or contributed to for the rest of their lives. I fail to see how these facts amount to "nothing" suggesting a complete ban of computers and the Internet might be the appropriate liberty deprivation for such a defendant whose particular type of crimes flourish on computers and the Internet.[8]

* * *

Narrowly construed (or not), the condition can easily be read as one that does not affect Defendant's liberty interest to an unacceptable degree. The condition at issue limits—rather than prohibits—Defendant's use of computers and Internet access devices in compliance with *Ullman*, and the district court guided the probation officer to authorize such usage "if deemed safe and appropriate"—a more meaningful clarification than the one we held was permissible in *Ullman*. Accordingly, the district court did not abuse its discretion in imposing the condition because it is not a greater deprivation of liberty than

---

[8] I believe that the Court's statement is dictum because, as the Court elsewhere notes, the Government unfortunately failed to argue that "extraordinary circumstances" are present here that would justify a complete ban. *Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1247 (10th Cir. 2018) (stating that a court's discussion of an issue not argued by the parties was dicta).

10

reasonably necessary to accomplish the purposes set forth in section 3553(a)(2)(B)–(D). I respectfully dissent.

The Court today remands for the district court to "amend" or "reformulate" the condition. Ct. Op. at 19–20. It appears to me that, based on *White*,[9] *Ullman*, and the Court's opinion, this amendment or reformulation can consist of an oral or written clarification that the condition the court imposed is only a "limitation" or "restriction" and not a "prohibition."

---

[9] *United States v. White*, 244 F.3d 1199, 1201 (10th Cir. 2001) ("remand[ing] for the court's clarification of the scope of the denial of Internet access").