**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 19, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JUAN VASQUEZ-CASTRO,

    Defendant - Appellant.

No. 23-2067
(D.C. No. 2:22-CR-01932-MIS-1)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **MURPHY**, and **CARSON**, Circuit Judges.
_____

Appellant, Juan Vasquez-Castro, entered a guilty plea and was convicted of reentry of a removed alien pursuant to 8 U.S.C. § 1326(a) and (b). The district court sentenced Mr. Vasquez-Castro to 48 months' imprisonment, varying upward from the U.S. Sentencing Commission Guidelines range of 18 to 24 months. Mr. Vasquez-Castro appeals, arguing his sentence was substantively unreasonable. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

## I.    BACKGROUND

Mr. Vasquez-Castro is a citizen of Guatemala. He was born in Guatemala in July 1993. When Mr. Vasquez-Castro was approximately fifteen years old, his family asked whether he was willing to live and work with one of his brothers in the United States. Mr. Vasquez-Castro agreed to move, although he does not remember who brought him to the United States without inspection. Mr. Vasquez-Castro reportedly lived in Memphis, Tennessee, for three years before moving to Dodge City, Kansas, with his brother and his brother's family.

In 2017, Mr. Vasquez-Castro was convicted of attempted rape of his twelve-year-old niece. The Presentence Investigation Report ("PSR") in the instant case provides that, in April 2017, a faculty member at Dodge City Middle School contacted the police to report allegations of sexual assault made by a female student. According to an official affidavit, the defendant kissed his twelve-year-old niece on the mouth, tried to take off her shirt, touched her breasts, and touched her vagina beneath her clothing. Mr. Vasquez-Castro then bought the victim a cell phone and told her not to tell anyone about the incident. Mr. Vasquez-Castro was arrested and interviewed by the police, at which point he admitted to forcing a kiss on the victim, grabbing her by the arms, and holding her still, while he tried to lift her shirt. He stated he used his hands to feel the victim's belly, breast, and front torso, and subsequently touched the victim under her clothing, touching her breasts and vagina. He then digitally penetrated the victim's vagina. He reported he gained an erection

2

from this, but let the victim go because he wanted to have sex with her and knew it was wrong.

Later, in November 2017, during an evaluation with the Kansas Department of Corrections, Mr. Vasquez-Castro denied the incident and stated he only gave the victim a cell phone. He admitted to telling the police he touched the victim in a sexually inappropriate manner, but stated he admitted to having done so because the police repeatedly asked him the same question and Mr. Vasquez-Castro thought that by admitting to the incident, the police would let him go. He alleged the victim engaged in sexual behavior with a friend with the same name as Mr. Vasquez-Castro.

Mr. Vasquez-Castro was charged with attempted rape in Kansas state court and pleaded no contest to the charge. The standard presumptive sentence for the offense was 59 months of incarceration. However, the court sentenced him to 48 months' incarceration, departing downward based on the victim's request, Mr. Vasquez-Castro's age, and Mr. Vasquez-Castro's criminal history. He was subsequently deported from the United States on October 21, 2020.

On October 8, 2022, United States Border Patrol agents found Mr. Vasquez-Castro, in Doña Ana County, New Mexico, attempting to conceal himself. He admitted to being a citizen of Guatemala without legal authorization to enter or remain in the United States. Mr. Vazquez was charged with reentry of a removed alien, in violation of 8 U.S.C. § 1326(a)(1), (a)(2), and (b)(2). He entered a guilty plea.

The PSR calculated Mr. Vasquez-Castro's total offense level as 13 and his criminal history category as III, resulting in a Guidelines imprisonment range of 18 to 24 months. Neither party objected to the PSR. Mr. Vasquez-Castro requested a low-end Guidelines sentence, or downward variance, asserting that such a sentence would be sufficient. The Government opposed Mr. Vasquez-Castro's request and asked that the court sentence Mr. Vasquez-Castro at the high end of the Guidelines range. The district court notified the parties before sentencing that it was contemplating an upward variance.

The district court sentenced Mr. Vasquez-Castro on April 11, 2023. The court reiterated at the sentencing hearing that it was considering an upward variance. The Government stated its position that a high-end sentence of 24 months would be sufficient to protect the public and deter Mr. Vasquez-Castro from returning to the United States again. Mr. Vasquez-Castro requested a sentence on the lower end or below the Guidelines range, arguing through counsel that he had been a model prisoner, he has family in his home country, he was very isolated at the time of his 2017 conviction, his relationship with his twelve-year-old niece was not sexual in nature, and he pleaded guilty to molesting her because he was frightened of getting a more severe sentence. Mr. Vasquez-Castro then addressed the court directly. He apologized for entering the country illegally, explained that he had gotten married and had a child since he was deported in 2020, and stated that he returned to the United States in search of employment to provide for his family. He requested the opportunity to be reunited with his wife and child. At the district court's request,

4

Mr. Vasquez-Castro then explained the events leading up to his 2017 conviction, reiterating that he never had a sexual relationship with his niece.

The district court then described the facts it was considering in determining an appropriate sentence for Mr. Vasquez-Castro. The court noted that it was "considering all [Mr. Vasquez-Castro's] arguments," including that he "was coming to [the] United States to work, that economic circumstances in his home country are very difficult, and he has a family to support; [his] argument made in his motion that his travel to the United States was very difficult, including having to pay human smugglers; [and] that [he] speaks Spanish[.]" Supp. ROA Vol. VI at 16–17. The court did not find "any [of] these factors merit a lower sentencing, given [Mr. Vasquez-Castro's] behavior while in the United States committing now his second felony in the United States." *Id.* at 17.

The district court also "consider[ed] that [Mr. Vasquez-Castro] denies sexually assaulting the 12-year-old victim in his prior State case, even though [he] admitted to at least some of the . . . allegations against him." *Id.* The court considered Mr. Vasquez-Castro's argument "that he was young when he committed these State crimes and he was culturally isolated," although the court "note[d] that [Mr. Vasquez-Castro] came to live in the United States with his older brother and was a member of a church which apparently had other Guatemalans in it, so he was not completely isolated; he had family and church surrounding him." *Id.* The district court also "consider[ed] [Mr. Vasquez-Castro's] argument that he has worked at the detention center and that he's a model prisoner and that the State will extradite

5

[Mr. Vasquez-Castro] for his State crime," as well as "[his] argument that he has family in his home country that supports him" and "family here in the U.S. that supports him as well." *Id.*

The court noted it was considering "the argument that [Mr. Vasquez-Castro] is innocent of the crime against the little girl and that he pled because he was frightened and this was actually just some confusion about a child having a cell phone" and "that the victim in that case may have asked for less time, which is why [Mr. Vasquez-Castro] only got a 48-month sentence in his State case." *Id.* at 17–18. The court also considered that the Government was asking for a higher-end sentence.

The district court considered Mr. Vasquez-Castro's history and the nature and circumstances of the offense, noting that his history "includes a 2017 conviction for attempted rape where [he] molested his 12-year-old step-niece." *Id.* at 18. The court considered "that this offense is of [Mr. Vasquez-Castro] returning to the country in which he committed this serious crime while still on probation for that crime, returning only two years after his release for the State sentence." *Id.*

The district court also considered "the need for the sentence imposed to provide just punishment, respect for the law, adequate deterrence, and protection of the public."[1] *Id.* It found "an increased sentence is just punishment," as "[i]t helps protect the public from [Mr. Vasquez-Castro], [and] provides adequate deterrence to

---

[1] Given Mr. Vasquez-Castro's immigrant status, the district court announced that it would not consider treatment because Mr. Vasquez-Castro would be returned to Guatemala upon completion of his sentence. Neither party requested that the district court consider treatment.

6

him for committing further crimes." *Id.* at 18–19. The court "considered that

[Mr. Vasquez-Castro] received a lenient sentence for his prior sex case and then

violated his probation by coming back to the United States quickly upon release." *Id.*

at 19. The court explained that it was "not re-punishing him for his State crime or

trying to make up for a lenient sentence in his State court [case]," and instead was

"just noting that the lenient sentence in his prior case did not prevent him from

coming to the United States so quickly upon release; thereby committing another

felony" and "considering the need to protect the public" because Mr. Vasquez-Castro

"ha[d] shown his ability to molest children." *Id.* Thus, district court concluded that

"just punishment requires the Court to give a higher-than-Guideline[s] sentence

because [Mr. Vasquez-Castro] reentered the country illegally after having committed

a very serious crime while in the country" and "he was released from prison on that

crime only about two years before he committed this crime." *Id.*

The court also "consider[ed] the kinds of sentences available, sentencing

range, and the Guideline[s] policies" and "the need[] to avoid unwarranted

sentencing disparities." *Id.* at 19–20. It explained that Mr. Vasquez-Castro "received

a somewhat lower sentence for his prior sex offense, a lower sentence than . . . most

defendants are given," thus finding that "this sentence, in part, will avoid

unwarranted sentencing disparities because many defendants would have received a

higher sentence." *Id.* at 20. All the same, "if there is any sentencing disparity," the

court found that such a disparity "is, in fact, warranted by the facts in this case." *Id.*

7

The court then sentenced Mr. Vasquez-Castro to 48 months' imprisonment. This represented an upward variance from the Guidelines range of 18 to 24 months. Mr. Vasquez-Castro timely appealed, challenging the substantive reasonableness of the sentence imposed.

## II.    DISCUSSION

### A.    Standard of Review

"Regardless of whether the sentence imposed is inside or outside the Guidelines range, [we] must review the sentence under an abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 51 (2007). The substantive reasonableness of a sentence centers on "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007). The factors include: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for a sentence to reflect the seriousness of the crime, deter future criminal conduct, protect the public from the defendant's further crimes, and provide training, medical care, or rehabilitation; (3) the sentences available; (4) the Sentencing Guidelines; (5) the Sentencing Commission's policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need for restitution. 18 U.S.C. § 3553(a); *see also United States v. Barnes*, 890 F.3d 910, 915 (10th Cir. 2018).

"We give substantial deference to the district court's weighing of these factors." *Barnes*, 890 F.3d at 915. Thus, "[w]e do not reweigh the sentencing factors

but instead ask whether the sentence fell within the range of rationally available choices that [the] facts and the law at issue can fairly support." *United States v. Blair*, 933 F.3d 1271, 1274 (10th Cir. 2019) (internal quotation marks omitted). We "will only overturn a sentence that is arbitrary, capricious, whimsical, or manifestly unreasonable," *United States v. Williams*, 994 F.3d 1176, 1180 (10th Cir. 2021) (quotation marks omitted).

"If [the district court] decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50. "[A] major departure should be supported by a more significant justification than a minor one." *Id.*; *see also United States v. Lente*, 759 F.3d 1149, 1158 (10th Cir. 2014) ("A 'major' variance should have 'a more significant justification than a minor one.'" (quoting *Gall*, 552 U.S. at 50)). All the same, while we "may consider the extent of the deviation," we "may not apply a presumption of unreasonableness." *Gall*, 552 U.S. at 51. To the contrary, "we uphold even substantial variances when the district court properly weighs the § 3553(a) factors and offers valid reasons for the chosen sentence." *Barnes*, 890 F.3d at 916. "Still, we do not just provide a rubber stamp of approval and therefore must determine if the district court's proffered rationale, on aggregate, justifies the magnitude of the sentence." *United States v. Walker*, 74 F.4th 1163, 1202 (10th Cir. 2023) (internal quotation marks omitted).

### B.    *Application*

Mr. Vasquez-Castro asserts that his sentence was substantively unreasonable. He argues the district court abused its discretion when it varied upward from the Guidelines range of 18 to 24 months and sentenced him to 48 months' imprisonment. Specifically, Mr. Vasquez-Castro claims "[t]here was insufficient cause to issue an upward variance and the sentence was otherwise substantively unreasonable," arguing the district court did not properly weigh the mitigating factors Mr. Vasquez-Castro identified. Appellant's Br. at 12. He also asserts the district court "myopically focused" on his 2017 conviction. *Id.*

### 1.    Failure to Consider Mitigating Factors

Mr. Vasquez-Castro first asserts the district court did not consider the mitigating factors in this case. He notes there was nothing aggravating about the conduct in the instant offense. Additionally, Mr. Vasquez-Castro argues the district court did not properly consider his personal history and the circumstances of this case, including that he has been a model prisoner and has family to support in Guatemala. Mr. Vasquez-Castro also notes that he was here for economic reasons, he did not commit any new crimes while in the United States, this is his first immigration offense, he has no criminal history beyond the 2017 conviction, and there is a low risk of recidivism.

When imposing sentences, district courts "should engage in a holistic inquiry of the § 3553(a) factors," *Lente*, 759 F.3d at 1174 (quotation marks omitted), and "consider every convicted person as an individual," *Gall*, 552 U.S. at 52 (quoting

10

*Koon v United States*, 518 U.S. 81, 113 (1996)). But while the court should not focus solely on one factor, *United States v. Walker*, 844 F.3d 1253, 1259 (10th Cir. 2017), it "need not afford equal weight to each § 3553(a) factor," *United States v. Cookson*, 922 F.3d 1079, 1094 (10th Cir. 2019). "[W]e must . . . defer not only to a district court's factual findings but also to its determinations of the weight to be afforded to such findings." *United States v. Smart*, 518 F.3d 800, 808 (10th Cir. 2008). Where a district court decides to vary, it "properly engages in [the § 3553(a)] inquiry when it bases its decision on specific, articulable facts supporting the variance and does not employ an impermissible methodology or rely on facts that would make the decision out of bounds." *Barnes*, 890 F.3d at 916.

In this case, the district court expressly discussed and considered the § 3553(a) factors, including the allegedly mitigating factors identified by Mr. Vasquez-Castro. For example, the court considered the nature and circumstances of the offense and Mr. Vasquez-Castro's history and characteristics, noting that "[Mr. Vasquez-Castro] was coming to [the] United States to work, that economic circumstances in his home country are very difficult, and he has a family to support," Supp. ROA Vol. IV at 16, and "that [Mr. Vasquez-Castro] has worked at the detention center and that he's a model prisoner," *id.* at 17. Despite considering these facts, the district court determined that "an increased sentence is just punishment," noting that it would help protect the public and provide adequate deterrence. *Id.* at 18. The district court also considered the kinds of sentences available, the Guidelines range, and the Guidelines policy statements, concluding that the presumptive reasonableness of the Guidelines

11

range of 18 to 24 months was overcome by the facts of the case, particularly Mr. Vasquez-Castro's prior conviction and his reentry into the country shortly after his release. Finally, the court found that an increased sentence would avoid any unwarranted sentencing disparity because Mr. Vasquez-Castro received a lower sentence for his 2017 conviction than most defendants are given.

Mr. Vasquez-Castro disagrees with *how* the district court weighed each these § 3553(a) factors. But the record reflects that the district court considered each of the factors, and we must defer to the weight the court afforded to them. *United States v. Gross*, 44 F.4th 1298, 1305 (10th Cir. 2022) ("[W]e will not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them anew." (internal quotation marks omitted)). Because the district court properly explained its decision to vary upward and based that decision on appropriate consideration of the § 3553(a) factors, the resulting sentence was substantively reasonable.

### 2.    Focus on the 2017 Conviction

In addition, Mr. Vasquez-Castro argues the district court "myopically focused on [his] prior State sex offense and re-punished him for . . . what it perceived to be too low of a sentence." Appellant's Br. at 12. He argues the Guidelines already took his prior conviction fully into consideration when the court calculated his criminal history category. Thus, Mr. Vasquez-Castro argues that the district court's upward variance essentially double-counted his 2017 conviction.

12

Mr. Vasquez-Castro's argument that the court improperly focused on his prior conviction is without merit. As has been addressed, the district court considered the § 3553(a) factors at length. There is "[n]o limitation" placed on the information that a district court may consider "concerning the background, character, and conduct" of a defendant at sentencing. 18 U.S.C. § 3661. Further, we must defer to the district court's weighing of the § 3553(a) factors. The district court's discussion of his 2017 conviction does not alone render Mr. Vasquez-Castro's sentence substantively unreasonable.

In addition, contrary to Mr. Vasquez-Castro's assertion, the district court did not repunish him for his 2017 conviction. The court expressly stated that it was "sentencing [Mr. Vasquez-Castro] only for this crime," Supp. ROA Vol. IV at 20, and that it was "not re-punishing him for his State crime or trying to make up for a lenient sentence in his State court [case]," *id.* at 19. Instead, the district court explained that it was "considering [Mr. Vasquez-Castro's] past behavior in imposing a sentence that will deter [him], protect the public, and satisfy the other 3553(a) factors." *Id.* at 20. And the court noted "that the lenient sentence in his prior case did not prevent him from coming to the United States so quickly upon release; thereby committing another felony." *Id.* at 19.

Finally, Mr. Vasquez-Castro's argument that the Sentencing Guidelines already counted his 2017 conviction, and that the district court's further consideration of that conviction resulting in a "double counting," is unavailing. The Sentencing Guidelines themselves reflect that a defendant's criminal history may

13

justify a sentence above the Guidelines range. For example, the Guidelines explicitly

consider the possibility of upward variances when "reliable information indicates that

the defendant's criminal history category substantially under-represents the

seriousness of the defendant's criminal history or the likelihood that the defendant

will commit other crimes." United States Sentencing Commission, *Guidelines

Manual*, § 4A1.3(a)(1) (Nov. 2021). Similarly, under U.S.S.G. § 2L1.2(b)(2), when a

defendant engaged in criminal conduct resulting in a felony conviction prior to his

first order of deportation or removal, his offense level for illegal reentry will increase

by an amount calculated based on the length of the sentence imposed for the prior

felony conviction. The comments to U.S.S.G. § 2L1.2 explain "[t]here may be cases

in which the offense level provided by an enhancement in subsection (b)(2)

. . . substantially understates or overstates the seriousness of the conduct underlying

the prior offense." *Id.* § 2L1.2, comment. (n.6). When "the length of the sentence

imposed does not reflect the seriousness of the prior offense[,] . . . a departure may

be warranted." *Id.* Thus, the district court's consideration of the 2017 conviction does

not render Mr. Vasquez-Castro's sentence substantively unreasonable.

### III.     CONCLUSION

Contrary to Mr. Vasquez-Castro's arguments, the district court's weighing of

the § 3553(a) factors, consideration of his prior offense conduct, and resulting

sentencing decision was substantively reasonable. Because we conclude the district court did not abuse its discretion, we AFFIRM.

Entered for the Court


Carolyn B. McHugh
Circuit Judge